**In re James Robert GALE and Charlotte Lorraine Gale, Debtors.**

**Bankruptcy No. 80-2-0745-L.**

United States Bankruptcy Court, D. Maryland.

Feb. 12, 1981.

Gary R. Greenblatt, Schwarz & Greenblatt, Baltimore, Md., for the debtors.

John Robinson, Baltimore, Md., Chapter 13 trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN AND CONVERTING CASE TO ONE UNDER CHAPTER 7

HARVEY M. LEBOWITZ, Bankruptcy Judge.

On January 13, 1981, this case came on for hearing before the Court on confirmation of the Debtors' Chapter 13 Plan. At the hearing the Debtors were present and represented by counsel, Gary R. Greenblatt.

Also present was John Robinson, the Trustee appointed by order of this Court on May 13, 1980. Having considered the arguments of counsel and of the Trustee together with the Debtors' Chapter 13 Statement and Plan the Court has made the Findings of Fact and Conclusions of Law that appear below.

### FINDINGS OF FACT

1. The Debtors filed a joint petition seeking relief under Chapter 13 of the Bankruptcy Code on May 9, 1980.

2. The Debtors' Chapter 13 Statement reflects that they owe $71,844.89 in secured debt and $7,750.00 in unsecured debt.

3. The Debtors' single most significant asset is their interest in real property known as 592 Oklahoma Avenue, Sykesville, Maryland, which is valued on the Debtors' Chapter 13 statement at $95,000.00. The real estate is subject to two mortgages totaling approximately $52,800.00. The obligation under the first mortgage is current.

4. The Debtors' Chapter 13 Plan proposes to satisfy in full the claims of all unsecured creditors and of all secured creditors other than the first mortgagee, who is to be provided for outside of the Plan. The means by which the Plan is to be consummated is a sale of the Oklahoma Avenue property by the Debtors. The Plan provides that payment of claims is to be made "at the sooner of (i) the sale and settlement of that property . . ., or (ii) three years from the date of confirmation."

5. Article III, ¶ 6 of the Debtors' Plan provides as follows:

> The debtors reserve the right to apply their income, or property, or the proceeds thereof, (other than their interest in the property 592 Oklahoma Avenue, Sykesville, Maryland 21784), at any time, in whole or in part, to the payment of any creditor claim, including the payment of monthly amortization of the Class 1 and Class 2 claims, before or after confirmation of this plan.

6. The Debtors' Chapter 13 Statement reflects that their estimated average future

monthly income is $1,300.00. The Debtors' budget is estimated at $1,285.00, and lists only the following expenses: $735.00 for rent or mortgage payments, $200.00 for utilities; and $350.00 for food. This budget leaves an excess of merely $15.00 per month to pay such other items as clothing, laundry, medical, insurance and transportation expenses.

## CONCLUSIONS OF LAW

■ The issue in this case is whether the Debtors' proposed Chapter 13 Plan can be confirmed. The criteria that a Court must apply when considering the confirmation of a Chapter 13 Plan are set out in § 1325(a) of the Code. Among these criteria is the so-called "best interest of creditors rule" established in § 1325(a)(4). In light of the facts in this case, the application of § 1325(a)(4) becomes most significant. As formulated in that subsection, the rule requires the Court to determine whether,

> The value, as of the effective date of the plan, of the property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date.

This requirement is frequently characterized as dictating "that the debtors' [Chapter 13] plan pay [no] less than would be received by creditors in a Chapter 7 liquidation." *In Re Garcia*, 6 B.R. 35, 6 B.C.D. 1212 (Bkrtcy.,D.Kan.1980). If § 1325(a)(4) is viewed in a purely objective sense, the test is simply one of evaluating whether the unsecured creditors receive the minimum amount required by § 1325(a)(4), rather than ensuring that unsecured creditors obtain the most the debtor is able to pay as might be suggested by the rule's short-hand label. *See In Re Hurd*, 4 B.R. 551, 2 C.B. C.2d 190 (Bkrtcy.,W.D.Mich.1980). Even if a purely objective test is applied without consideration of the independent requirements of "good faith" and "best effort" adopted in *In Re Schongalla*, 4 B.R. 360, 2 C.B.C.2d 286 (Bkrtcy.,D.Md.1980) (Goldburn, J.), a plan must nonetheless contain provisions that set forth specific proposals for repayment.[1] Otherwise, the Court cannot evaluate an unsecured creditor's position under the Chapter 13 Plan against his likely dividend under a Chapter 7 liquidation.[2]

■ In the instant case any prospect of payment to unsecured creditors is conjectural at best. The proposed sale of the Oklahoma Avenue property is solely within the power and discretion of the Debtor. Moreover, the Chapter 13 Plan makes no provision for payments should the Debtors be unable to consummate a sale, or should the sale price prove insufficient to pay 100 percent of the unsecured claims. Although the plan purports to "reserve" to the Debtors the right to apply future income to pay any claim, the Debtors' counsel conceded at the hearing that creditors had no means by which to enforce this provision for their benefit as it was intended to be exercised by the Debtors in their own discretion. In addition, in view of the Debtors' budget it would be totally unrealistic to expect that they would ever be in a financial condition sufficient to permit payments under a plan from future income. Thus, unsecured cred-

1. The application of the so-called "best effort" test that has been read into the "good faith" requirement established by § 1325(a)(3) of the Code usually arises in cases in which the Debtor's Chapter 13 Plan proposes minimal payments to unsecured creditors on the ground that § 1325(a)(4) requires no greater amount. The "good faith" cases generally have not called upon a court to analyze § 1325(a)(4) because it was clear that the objective "best interest" test had been satisfied. *See generally, In Re Heard*, 6 B.R. 876, 3 C.B.C.2d 170 (Bkrtcy.,W.D.Ky.1980) (collecting the "good faith" cases decided to date).

2. At least one court has denied confirmation of a Chapter 13 Plan based upon the use of a mathematical formula designed to determine the present value of payments under the plan to unsecured creditors. The product of this formula was then compared to the dividend likely in a Chapter 7 liquidation in order to determine whether the requirements of § 1325(a)(4) were satisfied. *In Re Williams*, 3 B.R. 728, 732 n.1, 1 C.B.C.2d 879, 885 n.1 (Bkrtcy.,N.D.Ill.1980).

itors have no more than an uncertain prospect that this Plan will ever result in payments on their claims.

Were these Debtors proceeding in a Chapter 7 liquidation, however, unsecured creditors would receive what would likely be a substantial payment on their claims. The Debtors' Chapter 13 Statement reflects that there is a $42,200.00 equity in the Oklahoma Avenue property. The same statement indicates that only approximately $26,800.00 in claims of all types would remain to be satisfied out of that equity. Under such circumstances, and taking into account both the $15,000.00 homestead exemption provided in § 522(d)(1) and the likely costs of administration and sale, the Court is compelled to conclude that unsecured creditors have a real present prospect of receiving a substantial dividend in a Chapter 7 liquidation as compared to no more than a speculative prospect of receiving a 100 percent payment under the Debtors' Chapter 13 Plan. A present prospect of payment is necessarily worth more than a purely speculative prospect of future payment, especially when as in the instant case the amount, if any, of some future payment cannot be converted to a present value.

In cases such as this, the Court must weigh the Debtors' Chapter 13 proposal for prospective payment to creditors against the certainty of a dividend in a Chapter 7 liquidation. This is the gauge for determining "best interest" under § 1325(a)(4) of the Code. Therefore, as the value of the certain payment of a liquidation dividend increases, a Chapter 13 Debtor must reduce the conjectural nature of the prospect for future payment under his plan. The application of this sliding scale established by § 1325(a)(4) dictates that in this case the balance is tipped in favor of a liquidation dividend because of the wholly ephemeral nature of the payments proposed under the Chapter 13 Plan. Thus, this Plan fails to satisfy the test established by § 1325(a)(4) of the Code. Because a Chapter 13 Plan must satisfy all the requirements of § 1325(a), confirmation of this plan must be denied.

■ The denial of confirmation of a Chapter 13 Plan is one of the express grounds provided in § 1307(c) as cause for conversion of a case to one under Chapter 7.[3] Although § 1307(c) provides that the court may act "on request of a party in interest and after notice and a hearing," nothing in the subsection expressly limits the court's ability to act upon its own motion. Indeed, the legislative history of § 1112(b), which contains identical language, indicates an intent to give "wide discretion to the court to make an appropriate disposition of the case *sua sponte*, or upon motion of a party in interest . . . for cause." S.Rep.No.95–989, 95th Cong., 2d Sess. 117 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5903. *Cf. In Re Dutch Flat Investment Co.*, 6 B.R. 470, 3 C.B.C.2d 136, 139 (Bkrtcy.,N.D.Cal.1980) (relying upon the Senate Report for the proposition that a Bankruptcy Court's power is more broad than the causes for dismissal specifically provided in § 1112(b)).

Under the circumstances of the instant case, cause necessarily exists that warrants conversion of the case to one under Chapter 7 *sua sponte*. Confirmation of the Chapter 13 Plan must be denied because the Plan does not satisfy the requirements of § 1325(a)(4). Moreover, any modified plan proposed by the Debtors must necessarily be non-confirmable under the feasibility test imposed by § 1325(a)(6) because the Debtor's budget will not permit payments

---

**3.** Section 1307(c) provides:

Except as provided in subsection (e) of this section, on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(4) denial of confirmation of a plan under section 1325 of this title and denial of additional time for filing another plan or a modification of a plan;

11 U.S.C.A. § 1307(c) (Supp. III 1979).

to be made from future earnings. In addition, inasmuch as the original petition was filed more than nine months prior to the hearing on confirmation, further delay pending the formality of a creditor motion to convert would be unconscionable in view of the already ample period of protection that the Debtors have availed themselves of under the provisions of the Code and the already substantial period of time that the Debtors have had to sell the property if they, in fact, intended to do so.

For the foregoing reasons, it is this 12th day of February, 1981, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that confirmation of the Debtors' Chapter 13 Plan filed May 9, 1980, should be and the same is hereby DENIED without leave to amend, and it is

FURTHER ORDERED, that this case should be and the same is hereby CONVERTED to a case under Chapter 7 of Title 11 of the United States Code, and it is

FURTHER ORDERED, that a copy of this Order be mailed forthwith by the Clerk of this Court to the Debtors' counsel of record, and that notice of the conversion of this case be given to all scheduled creditors.