**In re WASHINGTON FUNDING CORPORATION, Bankrupt.**

**Bankruptcy No. 79 B 1128 (CHG).**

United States Bankruptcy Court,
E. D. New York.

Aug. 5, 1981.

Sheehy & Friedler, Hempstead, N. Y., for bankrupt; Sidney Friedler, Hempstead, N. Y., of counsel.

Maxwell E. Charat, New Rochelle, for City of New Rochelle; Daniel W. Boddie, New Rochelle, N. Y., of counsel.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

There are several matters currently pending before the Court in this Chapter XI proceeding brought under the Bankruptcy Act of 1898 [1] by the Washington Funding Corporation ("Washington Funding"), a shell corporation with a single asset, a vacant corner building in the heart of the City of New Rochelle.

The City of New Rochelle ("New Rochelle") is seeking relief from the automatic stay imposed by Bankruptcy Rule 11–44 on its *in rem* proceedings for nonpayment of taxes against this property.[2] When the petition herein was filed more than two years ago, on April 30, 1979, New Rochelle was owed over $200,000 for unpaid real estate taxes; it is now owed more than $400,000.

Pending also is an order to show cause issued *sua sponte* by the Court on March 17, 1980 and later supported and joined in by New Rochelle, directing the debtor to show cause why the petition should not be dismissed on the ground "that the only purpose in continuing this proceeding is to reduce the taxes owed, and owing, to the City of New Rochelle."

## THE FACTS

The property which New Rochelle is seeking to sell for unpaid taxes is located at 460–466 Main Street, New Rochelle, New York. It is a two-story commercial building with a full basement, and parking at the rear for approximately 84 cars. The building is on the corner of a major intersection in New Rochelle in what was once a prime area but which has lost business to a nearby shopping mall and continues to deteriorate despite the best efforts of New Rochelle to arrest and reverse this decline. The building is called the "Arnold Constable building" because it was once occupied by that store. That occupancy ceased many years ago; the building is now vacant. Except for intermittent use around Christmas of each year as a flea market, the building has been empty since its purchase by Washington Funding in February, 1978.

Washington Funding acquired the Arnold Constable building, together with two parcels of undeveloped land, from a bank which had taken title in lieu of foreclosure. Washington Funding, a theretofore dormant New York corporation, paid $110,000 in cash for all three; the balance of the consideration consisted of the assumption of the back taxes on the Arnold Constable building, amounting then to around $200,000.

The two undeveloped parcels were immediately disposed of most advantageously. One was sold to USI Contractors ("USI") for $300,000, of which $100,000 was cash and $200,000 notes secured by a mortgage. The second undeveloped plot was sold to New Rochelle for $265,000 in July, 1978. (This sale, however, was not made by Washington Funding, but by KGK Realty Corporation, said to be owned by the same three men as own Washington Funding: David

1. Washington Funding filed its petition under Chapter XI prior to the effective date of the Bankruptcy Reform Act of 1978, October 1, 1979. Therefore, all proceedings relating to the case are governed by the Bankruptcy Act of 1898 and the Bankruptcy Rules prescribed under § 2075 of Title 28 of the United States Code, Pub.L. 95–598, § 403(a), 93 Stat. 2549 (1978).

2. Upon the filing of a petition under Chapter XI, Rule 11–44(a) stays "the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding * * *."

Kleinman, Marvin Getlan, and Meyer Katz.) Around the same time, New Rochelle also agreed to allow Washington Funding to pay off the back taxes on the Arnold Constable building over a period of several years. This agreement forestalled *in rem* proceedings which otherwise would have started on May 1, 1978.

However, when USI sued Washington Funding and its stockholders for fraud and breach of contract, a suit which ultimately resulted in a jury verdict in USI's favor for approximately $600,000, Washington Funding went back on its agreement with New Rochelle. Except for two payments in 1978 totaling $54,000, no taxes were paid New Rochelle, neither the taxes which Washington Funding had agreed to pay when it acquired the property in April, 1978, nor those accruing thereafter. These taxes accrue at the rate of approximately $50,000 per year because the building carries a high assessment dating back to its occupancy by Arnold Constable of around $1.2-million. Although no taxes were paid, *certiorari* proceedings were started by Washington Funding to review and reduce the taxes on the building from $50,000 to $15,000 per year.

*In rem* proceedings against the Arnold Constable building were scheduled to begin on May 1, 1979 when Washington Funding, just 24 hours earlier, filed a petition under Chapter XI in this Court on April 30, 1979. This filing triggered the automatic stay which Bankruptcy Rule 11–44 imposes on all actions against a debtor's property. Washington Funding's schedules show its

sole tangible asser, apart from $200, to be the Arnold Constable building and its fixtures.[3] The schedules acknowledge $210,-000 to be due New Rochelle for taxes and show unsecured obligations of $365,242.54.

Shortly after Washington Funding filed under Chapter XI, the suit brought by USI was settled. Getlan and Kleinman, two of Washington Funding's three stockholders, bought back for $165,000 the property sold USI. As part of the settlement, Washington Funding gave up the mortgage and notes which it had earlier received from USI.[4]

To collect the taxes due it, New Rochelle filed a claim in this Court for the unpaid pre-petition taxes. Up to and including April 30, 1969, they totaled $235,829.64. It also sought relief from the Rule 11–44 stay so that it could proceed with its *in rem* proceeding. Its secured position, it alleged, was "fast deteriorating because * * * taxes are being lost at the rate of $4,500 per month," and irreparable harm was being done "because of some vague, illusory expectations of the Defendant."

Washington Funding opposed both New Rochelle's tax claim and its complaint for relief. It moved to have the claim disallowed pursuant to § 2(a)(2A) of the Bankruptcy Act[5] as based on an arbitrary and capricious assessed valuation, as not crediting Washington Funding with the value of New Rochelle's use and occupation of a parking lot and as improperly including penalties. New Rochelle's request for relief from stay was opposed on the ground that

---

3. The only other assets listed in the schedules are a liability policy of "unknown" value, and two suits against USI and its president in which the debtor sought to recover on four outstanding notes owed it by USI and its president and to foreclose on the mortgage it was given when it sold one of the parcels of real property to USI. These suits were withdrawn as part of the debtor's settlement with USI.

4. Overlooked by the Court when it approved the settlement, after notice and a hearing to all creditors, was the fact that the petition failed to list the mortgage and notes from USI as part of Washington Funding's assets. This is one of the facts that leads this Court to believe that the protection of Washington Funding's creditors may be best served by converting this

proceeding to straight bankruptcy, rather than dismissing it, so that a trustee can take over and investigate its affairs.

5. Section 2(a)(2A) of the Bankruptcy Act vests the bankruptcy court with the jurisdiction to "[h]ear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and been adjudicated by a judicial or administrative tribunal of competent jurisdiction. * * *" 11 U.S.C. § 11(a)(2A). A similar provision is incorporated in § 505 of the new Bankruptcy Code.

Washington Funding has an equity in the Arnold Constable building; that it expects to effectuate a successful arrangement; and that the Arnold Constable building and its equity in that property were "indispensable and essential to the business of the debtor and a successful consummation of its plan of arrangement to be proposed."

With reference to both matters, this Court, on February 22, 1981, ruled, for the reasons explained in an accompanying memorandum, that it would not "reexamine the taxes which the debtor agreed to pay in April, 1978, except to the extent that they may incorporate any penalties." Washington Funding moved for reconsideration. It urged that the pending tax review proceedings in the state courts regarding the tax years 1978–1979 and 1979–1980 might take as long as one and a half years[6]; it also claimed that its ability to offer a plan depended on being able to rent the Arnold Constable building at a profit, which, in turn, depended upon reducing the taxes. But New Rochelle's pre-petition tax claim did not involve any taxes *subsequent* to the filing of the petition, neither the 1979–1980 tax year, nor the current taxes, nor did New Rochelle's right to relief from stay require the determination of such taxes.[7] Following the motion for reconsideration, the Court, after further review of the record, issued an order, *sua sponte*, that the debtor show cause why its Chapter XI petition should not be dismissed. This Order read in part:

6. On January 8, 1980, the Court signed an order authorizing the bankrupt to retain special counsel to pursue the state court proceedings required to reduce the real property taxes assessed against the Washington Funding property. Such proceedings are now pending for the tax years 1978–1979 and each succeeding tax year.

7. Pending determination of whether this bankruptcy proceeding should be dismissed or not, this Court has not formally ruled on Washington Funding's motion for reconsideration, although the Court indicated from the bench that its February 22, 1980 Opinion only precluded reexamination under § 2(a)(2A) of the pre-petition taxes covered by the agreement of Washington Funding with New Rochelle, and not those for the following year. Should Washington Funding's motion for reconsideration not be mooted by dismissal of this bank-

"WHEREAS it is the duty of the Court *sua sponte* when there is reason to believe that its jurisdiction has been imposed upon, to inquire into the facts by some appropriate form of proceeding, and, to act as public justice may require, and

"WHEREAS the debtor in possession herein filed a petition under Chapter XI of the Bankruptcy Act on April 30, 1979 and has not filed a plan of arrangement and has not taken any steps toward the filing of a plan of arrangement, and

"WHEREAS it is the purpose of Chapter XI to allow an honest debtor to confirm a plan which will arrange its obligations to unsecured creditors and thereby give the debtor an opportunity to rehabilitate itself, and

"WHEREAS it now appears that the rehabilitation of the debtor depends upon reduction of the taxes currently accruing to the City of New Rochelle on the real property constituting the sole asset of the debtor, and

"WHEREAS it now appears that the only purpose in continuing this proceeding is to reduce the taxes owed and owing to the City of New Rochelle, and

"WHEREAS the unsecured claims filed in this proceeding are relatively insubstantial and it would appear that no arrangement of these debts is needed to enable the debtor to rehabilitate itself,[8]

ruptcy proceeding, a formal order will be entered which will clarify that the February 22, 1980 Opinion does not embrace taxes for the single pre-petition tax year which followed the agreement with New Rochelle. As to such taxes, Washington Funding will enjoy whatever examination, if any, is appropriate under § 2(a)(2A) of the Bankruptcy Act.

8. Apart from the taxes owed New Rochelle and disputed and insider obligations, Washington Funding's schedules showed, at most, $40,000 in unsecured obligations. Excluding New Rochelle, the claims filed up to the time of the Court's February 22, 1980 Order totaled only $12,000, and many appear to be objectionable because the supporting invoices name as the primary obligee someone other than Washington Funding. Thus, the claims filed by Consolidated Edison for around $8,000 identify the

"IT IS THEREFORE HEREBY ORDERED that the debtor and debtor-in-possession * * * show cause, if any there may be why the debtor's Chapter XI petition should not be dismissed * * *."

After repeated adjournments requested by the parties for a variety of reasons, hearings were held on May 8, 1981 and June 2, 1981 respecting both New Rochelle's application for relief from stay, and the proposed dismissal of the Chapter XI proceeding.

At this hearing, New Rochelle presented uncontradicted testimony that as of the date of the hearing, there was owed it on the Arnold Constable property for taxes, interest, and penalties the sum of $441,838.86; that while it has collected no taxes on the Arnold Constable property, it has paid to the County of Westchester and to the City School District of New Rochelle, for both of which it acts as a collecting agent, the amounts due these bodies on account of this property. So far, New Rochelle has paid the City School District $68,494.11, the amount due for 1978 and earlier; the monies due for 1979 will be paid later this year. New Rochelle has paid the County of Westchester all amounts payable to that body through April 30, 1979. The present tax bill of $444,833.11 comprises pre-petition taxes, penalties, and interest totaling $245,829.64; post-petition penalties and interest on this figure of $75,794.63; and post-petition taxes, penalties, and interest of $123,208.84.

A real estate appraiser, Thomas F. Reynolds, called by New Rochelle, testified that the fair market value of the Arnold Constable building on May 1, 1978 and May 1, 1979 was $705,000. He refused, however, to place a value on the building today, except to say that it is now worth less because the neighborhood is deteriorating and the building itself is "not in good condition nor well-maintained." His written appraisal notes that the building has been vacant for a number of years, and a vacant building often suffers deterioration.

A police officer testified that in February, 1981, he observed papers, cans, bottles, parts of a truck, a Christmas tree, and other debris on the grounds; that he had occasion recently to observe the property again, and the same conditions existed, except that the Christmas tree had been removed.

David Kleinman, Washington Funding's president and the owner of more than 25 percent of its stock, testified as an expert witness that the Arnold Constable building today has a value of $650,000. He also gave evidence that a broker was engaged in negotiations looking toward a lease of the premises to the local family court on terms which would permit Washington Funding to meet its obligations. He charged New Rochelle with bad faith, claiming that the building could have been leased earlier on favorable terms but for the invocation of zoning regulations in a discriminatory fashion.[9] He testified that all the debris observed in the parking lot of the Arnold Constable premises had been cleaned up; that the damage done the building by a former tenant had been rectified[10]; and that all necessary repairs since the filing of the petition had been performed.

Washington Funding's counsel stated that *certiorari* proceedings had been filed with respect to each and every tax year subsequent to 1978 and were still pending, but had not been actively prosecuted, ostensibly because the attorney retained to rep-

serviced party as "MDM Distributors a/k/a Washington Funding" and "MM Distributors, Inc. a/k/a Washington Funding." After entry of the Court's Order, a disputed claim was filed in the amount of $27,000 and Washington Funding's bankruptcy counsel, after their replacement, filed claims for both pre- and post-petition services totaling $33,000, to which objection has been taken by the debtor.

**9.** New Rochelle's attorney has pointed out that decisions concerning zoning matters are reviewable by a duly constituted Zoning Board and no application or complaint was ever filed with that Board.

**10.** The Court had authorized the employment of counsel to bring suit against Marsha Stahl, who had vacated the premises sometime earlier, owing $4,000 in rent and having destroyed property of a value of $42,000.

resent Washington Funding was not confident of being paid.

Before the hearing on New Rochelle's application for relief from stay, New Rochelle moved for an order denying the plan of arrangement submitted by the debtor on March 25, 1981. Under this plan, New Rochelle was to be paid $210,000 upon confirmation, and the balance, to be determined "between the debtor and creditor or set by the Court," was to be paid in four annual installments starting 180 days from confirmation. Other creditors were also to receive 15 percent of their scheduled claims in four annual installments. Neither in this plan, nor during the course of the hearing, was it explained how this debtor, whose only asset is a vacant building yielding no rent, was going to secure $210,000 immediately, nor the monies thereafter needed, to fund this plan. No acceptances of this plan have been received by the Court, although Washington Funding claims that it has such acceptances from a handful of creditors. In view of the rejection of this plan by New Rochelle, its confirmation is impossible.[11]

During the two years this proceeding has been pending, Washington Funding has never complied with Bankruptcy Rule 11–30 and Local Bankruptcy Rule XI–5 by filing weekly and monthly reports of its receipts and expenditures. Accordingly, what its income has been, and whether it has obtained the funds necessary to operate and keep the Arnold Constable building in repair, is unknown. That its income has been minimal, however, is evident from the fact that, as noted earlier, the building has concededly been vacant almost the entire time.

Except on two occasions, no creditor, other than New Rochelle, has ever appeared at the first meeting of creditors, nor at any of the other hearings scheduled by the Court. No creditors' committee has ever functioned.

## DISCUSSION

Chapter XI was enacted in 1938 as a statutory variation of the common-law composition of creditors. 52 Stat. 905–916. As Congress noted in continuing its substance in the new Bankruptcy Code, "The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business' finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." H.Rep.No.95–595, 95th Cong., 1st Sess. 220 (1977) U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6179.

■ To protect the business seeking rehabilitation under the Bankruptcy Act from destructive litigation, Bankruptcy Rule 11–44 automatically stays all proceedings against a company as soon as it files for relief. But the bankruptcy court has the power, "for cause shown," to "terminate, annul, modify or condition" this stay. In a proceeding to obtain such relief, the burden of proof as to all issues lies on the debtor; he must demonstrate he is entitled to continuation of the stay. *In re Zeckendorf*, 326 F.Supp. 182 (S.D.N.Y.1971).[12] Washington Funding has not met its burden.

This Chapter XI proceeding appears to have no present purpose other than to stay the City of New Rochelle from collecting the taxes on the Arnold Constable building.

---

**11.** Before a plan may be confirmed, it must be accepted by creditors constituting a majority in number and amount of each class. Under the plan of Washington Funding, New Rochelle is the only creditor in its class, so that its rejection of the plan dooms it. Bankruptcy Act § 362, 11 U.S.C. § 762 (repealed 1978).

**12.** Under the Bankruptcy Code, applications for relief from stay are governed by § 362, which replaces Bankruptcy Rule 11–44. Paragraph (d) of § 362 authorizes relief from stay for "cause." "Cause" is not defined, but is explicitly stated to include lack of adequate protection of a property interest. Where real property is involved, the stay may also be lifted where the debtor has no equity in the property, and the property is not necessary to an effective reorganization. "[T]he facts of each case will determine whether relief is appropriate under the circumstances." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 342–44 (1977) U.S.Code Cong. & Admin.News 1978, p. 6300. Section 362 places the burden of proof on the issue of the debtor's equity in the collateral involved on the party requesting relief. On all other issues, the burden remains on the debtor.

No plan of arrangement capable of confirmation has been presented, and none seems likely. Nor are there economic values present here to be preserved. Washington Funding operates no business; it has no employees; it has no going concern value. Washington Funding is a shell corporation; its only function is to hold title to the Arnold Constable building for the benefit of its three stockholders.

As long as they are sheltered by the bankruptcy laws, Washington Funding's owners are able to speculate in the real estate market without risk or cost. If real estate values increase so as to overtake the amount due for taxes, Washington Funding's three stockholders can sell at a profit; if real estate prices fall, they can walk away from the building no worse off than they are now. They cannot lose as long as New Rochelle is blocked by the automatic stay from enforcing the rights ordinarily available to a municipality when a real estate owner ceases to pay taxes.

For over four years, this well-situated property, worth at one time $1.2-million, has contributed not a penny to the tax rolls. Indeed, New Rochelle has been forced, in effect, to subsidize this Chapter XI proceeding by meeting out of its own funds the amounts due Westchester County and the School District on the Arnold Constable building. At the same time, this derelict, empty building on a main intersection cannot but be adversely affecting the entire area. Counsel for New Rochelle calls it an "eyesore in the heart of the downtown community." He states that "because of its detrimental effect on the entire area it is losing revenue from surrounding premises."

In the two years this proceeding has been pending, the debtor has not been able either to rent, or sell, the Arnold Constable building. Its eleventh-hour attempt to cast the blame on New Rochelle is unimpressive. If any action taken by New Rochelle at any time invaded any right of Washington Funding, appropriate remedies were available.

New Rochelle is entitled to the same rights against the property of Washington Funding as it has against any other taxpayer. Any other conclusion on the facts of this case would be devastating to municipalities throughout this country. Owners of real property could avoid *in rem* proceedings indefinitely by transferring their property to dummy corporations which would then file under Chapter XI. To permit a shell corporation to remove property from a municipality's tax rolls simply by filing for reorganization would invite wholesale evasion of real estate taxes.

Bankruptcy courts confronted by similar, or even less compelling, facts have reached a result designed to end such misuse of the bankruptcy laws.

In *In re Victory Construction Corp.*, 9 B.R. 549 (Bkrtcy.C.D.Cal.1981), a real estate speculator, using a shell corporation, acquired property from a trustee in bankruptcy encumbered, as he knew, by numerous liens, many of which were in default. When the shell corporation was unsuccessful in staving off foreclosure proceedings in the state court, it filed under Chapter 11 of the new Bankruptcy Code. During the pendency of the Chapter 11 proceeding, no payments were made to the secured creditors. The court found that the Chapter 11 proceeding "was not filed with a genuine intent and desire to use the provisions of Chapter 11 for its intended purpose, but solely to prevent foreclosure while the debtor created a vehicle for profit "through use of the secured creditors' collateral at low interest * * *." 9 B.R. at 565. Finding lack of good faith and a misuse of the reorganization process, the court granted relief from stay.

Before reaching its conclusion, the California bankruptcy court reviewed extensively the history of the development of the requirement that a petition under the bankruptcy laws be filed in "good faith." It concluded that solidly embodied in American bankruptcy law is the concept that the rehabilitation and reorganization provisions of the bankruptcy laws impose a requirement of "good faith" and that lack of "good faith" constitutes cause for relief from the law's automatic stay. Good faith is lacking

when conduct is present "which is inconsistent with the underlying purposes and contemplation of the reorganization and rehabilitation process and constitutes a perversion of legislative intent." 9 B.R. at 558. Although *Victory Construction* was decided under the Bankruptcy Code, whereas the present case involves the Code's statutory predecessor, the Bankruptcy Act, the analysis applies to both statutes equally.

Very close to the facts in this proceeding is *In re Nancant*, 8 B.R. 1005, 7 B.C.D. 410 (Bkrtcy.D.Mass.1981). The sole asset of the debtor in that proceeding, which was also brought under the Bankruptcy Code, was a parcel of property known as the Wilbraham-Monson Academy. The property had been transferred to the debtor, a newly-formed corporation, one day before the corporation filed under Chapter 11. The Town of Monson, a tax creditor of Nancant in the amount of $180,000, immediately requested that the petition be dismissed for cause. The property in question was burdened by several liens, but the debtor insisted that agreement could be reached with these creditors, but for the fact that the taxes assessed by Monson were excessive. The debtor sought to have the bankruptcy court reduce those taxes pursuant to § 505 of the Code. The debtor claimed that without a reduction of its excessive tax burden, there would be no new funds forthcoming for reorganization purposes. The court observed that it appeared "that the sole purpose for the Chapter 11 proceeding is to allow the debtor to avail itself of the bankruptcy court's jurisdiction to hear and determine questions of real estate tax liability without requiring the debtor to pre-pay the tax assessed against it." 8 B.R. at 1008, 7 B.C.D. at 412. In language most pertinent to this proceeding, the court concluded that the petition had not been filed in good faith and should be dismissed:

"This Court is not a tool by which debtors can seek to have tax questions litigated outside the normal administrative and legal means by means of which such relief is usually obtained." 8 B.R. at 1009, 7 B.C.D. at 413.

Also pertinent is Bankruptcy Judge Babitt's often-cited decision in *In re Groundhog*, 1 B.C.D. 923, 926 (B.C.S.D.N.Y.1975). That case, too, involved a debtor whose single asset was a piece of real property against which the plaintiff was seeking to enforce its security interest. Judge Babitt suggested that the criteria to be considered by the bankruptcy court in determining whether or not to lift a stay "should bear a rational basis to the point of the proceedings in which they arise, the balance of hurt between the parties, the nature of the interests to be protected, and the overall congenial statutory purpose of Chapter XI." 1 B.C.D. at 925. He pointed out: "It is not far-fetched to suppose that this Chapter XI was filed more to secure the automatic stay of lien enforcement now mandated by Rule XI–44 than by any sincere effort by the debtor to come to an accord with its creditors." During the nine months that proceeding had been pending, he continued, there had been "virtually no movement towards an arrangement with creditors, much less the commencement of a meaningful dialogue seeking that end. More to the point is that the stay has bound the hands of the mortgagee while the debtor has not made a single payment on the outstanding obligation." *Ibid.* Observing that there is "no guarantee that every plagued debtor must remain in this Court and successfully emerge," Judge Babitt went on to hold that the balance of hurt lay with the plaintiff:

"But I know of no rule of law which insists that a debtor continue as the beneficiary of a stay of foreclosure where there is no corresponding payment made to at least keep interest or taxes current. Even secured parties have rights and in view of the fact that the defaults have continued and there is not even a promise that they will not continue, I believe the balance of hurt suggests that the plaintiff be permitted to proceed * * *. The short of it is that the debtor is utilizing the Rule XI–44 stay, hoping that, somewhere, someone will fund an arrangement or refinance the mortgage with the plaintiff. This is entirely too slim a reed upon which this Court should exercise its

discretion and keep the plaintiff at bay while the debtor continues to pray." 1 B.C.D. at 926.

Applying the principles developed by these cases to the factual situation disclosed here, New Rochelle is clearly entitled to have the stay against it lifted.

We are no longer at the beginning of this Chapter XI proceeding. It has now been pending over two years, yet Washington Funding is no better off than when it first filed and no nearer to meeting its obligations. Indeed, the situation has worsened because now the tax debt has doubled and Washington Funding has, in addition, incurred administrative obligations. Thus, its liabilities have increased to the detriment of its creditors, while its single asset, the Arnold Constable building, has declined in value and will continue to decline as long as it remains vacant.

Any rehabilitation or reorganization of the debtor-in-possession appears unlikely. The only plan offered by the debtor cannot be confirmed and the debtor's own resources appear inadequate to support either that or any other arrangement unless the Arnold Constable building is sold.

For two years, Washington Funding has tantalized New Rochelle and the Court with assurances that momentarily some happy disposition would be made of the property that would permit it to meet its obligations to the City, but nothing of the sort has occurred. Exactly the same type of hope is now held out, but as Bankruptcy Judge Babitt observed in similar circumstances in *In re Groundhog, supra,* this is "entirely too slim a reed upon which this Court should exercise its discretion and keep the plaintiff at bay while the debtor continues to pray."

The balance of hurt in perpetuating the stay clearly lies with New Rochelle. That the equities lie with it with respect to pre-petition taxes was decided by this Court on February 22, 1980 when it made clear that it was not going to reevaluate the debtor's tax liability prior to April 30, 1978. New Rochelle is being severely prejudiced by the lack of revenue from the Arnold Constable building and by its maintenance as an eye-sore in the center of a critical area. Unless the stay is lifted so that the building can be sold, it will continue to be a drain on the City's resources.

It is likely that the Arnold Constable property is currently overassessed, but Washington Funding knew what the taxes were when it acquired the property. Indeed, at the time Washington Funding acquired the property, part of the consideration which it gave was its commitment to pay the $185,000 in taxes then due. As for taxes accruing thereafter, a means exists for obtaining their reduction, and Washington Funding availed itself of such means when it started *certiorari* proceedings. Those proceedings are still pending. That they have lain dormant clearly represents a deliberate decision by the owners of Washington Funding to spend their money litigating in the bankruptcy court rather than the state courts. Even were the Court to accept Washington Funding's claim that taxes should have been accruing at the rate of $15,000, rather than $50,000, per year, over $250,000 would still be due New Rochelle. The City is entitled to this money.

Although Washington Funding is a person in the eyes of the law, and, therefore, capable of invoking Chapter XI, it has no economic substance. It was, and is, simply a vehicle for an investment in real estate, which initially was extraordinarily successful. Within a few months after the Arnold Constable building and two other properties were acquired for a total cash outlay of $110,000, Washington Funding and its stockholders had realized $565,000 while still retaining the building. Even after one sale became undone, Washington Funding's owners appear still to have been ahead. Were they to lose the Arnold Constable building, they probably will still have recouped all the money they originally laid out with further gain possible from the sale of the vacant land taken back from USI. There is no reason why, on these facts, the citizens of New Rochelle should continue to be deprived of the tax revenue from the Arnold Constable building.

█ It is not the function of the bankruptcy court to provide an alternative avenue of tax relief to the *certiorari* proceedings available in the state courts. *In re Nancant, supra.* Nor is it its function to reduce the taxes currently accruing on a building so that its owners can operate at a profit.

█ Accordingly, the Court is lifting the automatic stay imposed by Rule XI–44 in order to permit New Rochelle to pursue its remedy for unpaid taxes against the Arnold Constable building.

In view of this disposition of the case, there is no need to reach the question as to whether New Rochelle's tax claim is adequately protected. Despite the high value placed on the building by the two expert witnesses, a value which would more than cover the taxes due, leaving a very solid cushion, the Court doubts that adequate protection is present here. The experts' optimistic views fly into the teeth of the fact that in an arm's-length transaction just a little over three years ago, this building, together with two other parcels, netted only $110,000 over taxes, and the tax bill since that time has increased substantially. Moreover, the Court questions whether an empty building subject to vandalism and fire can ever constitute adequate protection when held by an insolvent corporation apparently without even the assets needed to pay for insurance out of its own funds. But even if adequate protection were present here, it would make no difference, since New Rochelle is entitled to relief for the reasons stated earlier.

█ While the considerations outlined above for lifting the stay would also justify dismissing this proceeding, such dismissal would leave the few unsecured creditors who have filed claims without recourse, and New Rochelle without any possibility of recovering any deficiency judgment. Also, in the event that the expert witnesses have accurately gauged the real estate market, and a surplus results from the sale of the Arnold Constable building for nonpayment of taxes, that surplus should be available to creditors.

There are additional reasons for not dismissing this proceeding. As has been repeatedly observed, a debtor-in-possession has no incentive to investigate its own possible wrongdoing. *SEC v. American Trailer Rentals Co.,* 379 U.S. 594, 617, 85 S.Ct. 513, 526, 13 L.Ed.2d 510 (1965); *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 451, 60 S.Ct. 1044, 1051, 84 L.Ed. 1293 (1940); *In re Pioneer Warehouse Corp.,* 2 B.R. 1, 10, 5 B.C.D. 1256, 1262 (Bkrtcy.), *aff'd,* 2 B.R. 14 (D.C.E.D.N.Y.1979). The facts disclosed by this record indicate that with respect to the properties acquired by Washington Funding simultaneously with the Arnold Constable building, there may have been a possible diversion of corporate opportunity to the principals of Washington Funding or other misconduct, making them liable to the creditors of Washington Funding. The record indicates that the profitable sale to the City of New Rochelle of a portion of the property purchased by Washington Funding was not made by it, but was made by another corporation controlled by the same persons as own it. Diversion of this substantial profit invites investigation. Also anomalous is the fact that Washington Funding does not appear to have remained in possession of the proceeds received from the sale to USI which led to the lawsuit settled shortly after this proceeding was filed. This, too, would be appropriate for investigation by a trustee acting in aid of the creditors of Washington Funding.

Accordingly, while the Court is issuing an order lifting the stay, it will schedule another hearing for the purpose of determining whether this proceeding should be dismissed, or converted to one in straight bankruptcy, with the debtor-in-possession being replaced by a trustee. Unless New Rochelle or some other creditor requests conversion, the proceeding will be dismissed.

The foregoing constitutes the findings of fact and conclusions of the Court. An Order consistent with this Opinion is being entered contemporaneously.