In re **HARVEY PROBBER, INC.,** a/k/a **Harvey Probber, Inc. (New York), Debtor.**

In re **HARVED REALTY CORP., Debtor.**

**Bankruptcy Nos. 84–01067–HL, 84–01068–HL.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 26, 1984.

Christopher Parker, Stephen Wald, Craig & Macauley, P.C., Boston, Mass., for debtors.

Charles R. Bennett, Riemer & Braunstein, Boston, Mass., for Bank.

Steven T. Hoort, Ropes & Gray, Boston, Mass., for creditors committee of Harvey Probber of Mass.

## MEMORANDUM ON DISMISSAL OF HARVEY PROBBER, INC. OF NEW YORK AND HARVED REALTY CORP. CHAPTER 11's

HAROLD LAVIEN, Bankruptcy Judge.

On August 16, 1984, Harvey Probber, Inc. (New York) ("Probber NY"), Harvey Probber, Inc. (Massachusetts) ("Probber MA"), and Harved Realty Corp. ("Harved"), filed Chapter 11 petitions in this Court. Probber MA., a wholly owned subsidiary of Probber NY, is a manufactur-er of business/office furniture. From 1961 to present, it has operated from facilities located at 44 Probber Lane, Fall River. It has approximately 100 employees, assets, and trade liabilities. Probber NY, however, has no business, no employees, and no assets other than the stock of its wholly owned subsidiaries.[1] Its only liabilities are guarantees of its subsidiaries' lending agreements with the Shawmut Bank of Boston, N.A. (the "Bank").[2] Harved has no employees, no business, and its only assets are property located at 136 Fifth Avenue, New York City, New York, and 44 Probber Lane, Fall River, Massachusetts. The New York premises, subject to a proposed sale, is leased to tenants. Although Probber MA occupies the Fall River premises, it pays no rent. The only liabilities of Harved are guarantees to the Bank for the liabilities of Probber MA, including a mortgage on the Fall River property. In sum, Probber MA is the only company with substantial assets and debts. Harved merely holds real estate and Probber NY is merely a stockholder of Probber MA and Harved. Probber NY and Harved's only creditor at the time of filing was the Bank. At the time of filing, Harved was attempting to sell its unencumbered New York real estate in order to loan $400,000 to Probber MA.

The guarantees to the Bank stem from transactions in 1981. On June 1, 1981, Probber NY and Probber MA entered into a Credit and Loan Agreement with the Bank and jointly and severally executed an unsecured promissory note in the amount of $2,000,000 to establish a three-year revolving line of credit. This obligation was further unconditionally guaranteed by Harved. In February, 1984, the principals for the debtors entered into negotiations for the extension of the line of credit plus an agreement to lend additional sums of money to the debtors. On May 16, 1984, the Bank agreed to lend an additional

---

1. That is, Probber MA and Harved. There may be other subsidiaries owned by the debtor, Harvey NY; however, counsel for the debtors argued that their worth were minimal.

2. The initial filings of Probber NY and Harved were skeleton, but the required case cover sheet listed one creditor.

$325,000 to Probber MA, although only Probber MA executed a promissory note in favor of the Bank without the Bank executing any reciprocal agreement. On May 25, Harved executed and delivered to the Bank a second Unlimited Guarantee of Probber MA's obligation to the Bank and a mortgage on the manufacturing premises at 44 Probber Lane. Probber MA contends that the Bank's breach of its agreement to lend the additional $325,000 resulted in the present filing. The Bank denies an unconditional obligation to advance the $325,000 and, in fact, only advanced $150,000. On June 27, 1984, the Bank made demand on Probber MA for payment of the June 1, 1981 and the May 25, 1984 notes. Additionally, the Bank made demands on Probber NY and Harved under their unlimited guarantees. On August 9, 1984, the Bank moved to foreclose upon the mortgage in Land Court. At the same time, the Bank filed an action in Suffolk (Massachusetts) Superior Court and obtained an order restraining Harved from disposing of the proceeds of the sale of the New York property. The debtors' Chapter 11 petitions followed. Shortly thereafter, the Bank filed a motion to dismiss against Harved. The Court also indicated an intention to dismiss petitions of Probber NY and Harved, *sua sponte.*[3]

■ The facts required to mandate dismissal based upon lack of good faith are as varied as the number of cases. *See, e.g., In re Coastal Cable T.V., Inc.,* 709 F.2d 762 (1st Cir.1983); *Furness v. Lilienfield,* 35 B.R. 1006 (D.Maryland 1983); *In re O'Loughlin,* 40 B.R. 707 (Bankr.D.Ma. 1984); *In re Levinsky,* 23 B.R. 210 (Bankr. E.D.N.Y.1982); *In re Spenard Ventures, Inc.,* 18 B.R. 164 (Bankr.D.Alaska 1982); *In re First Dade Corp.,* 17 B.R. 887 (Bankr.M.D.Fla.1982); *In re Mogul,* 17 B.R. 680 (Bankr.M.D.Fla.1982); *In re Washington Funding Corp.,* 13 B.R. 216 (Bankr.E.D.N.Y.1981); *In re Scher,* 12 B.R.

258 (Bankr.S.D.N.Y.1981); *In re Victory Construction Co.,* 9 B.R. 549 (Bankr.C.D. Cal.1981); *In re Alison Corp.,* 9 B.R. 827 (Bankr.S.D.Cal.1981); *In re Nancant, Inc.,* 8 B.R. 1005 (Bankr.D.Ma.1981); *In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bankr.N.D.Cal.1980); *In re Groundhog,* 1 B.C.D. 923 (Bankr.S.D.N.Y.1975). A common thread is the requirement that the debtor must owe real "legitimate" debts, *In re Coastal Cable T.V., Inc.,* 709 F.2d at 765, to "real creditors," *Furness v. Lilienfield,* 35 B.R. at 1013, constituting an "unsecured creditor body." *In re Alison Corp.,* 9 B.R. at 829. Further, there must be an established "ongoing business," *In re Dutch Flat Investment Co.,* 6 B.R. at 471, with more than a "vague plan for the development of [a] sole asset." *In re Nancant, Inc.,* 8 B.R. at 1009. Further, a relationship must exist between the Chapter 11 petition and "the reorganization-related purpose" of that chapter. *In re Coastal Cable T.V., Inc.,* 709 F.2d at 764. As more fully stated by District Judge Young:

> Other courts have found the financial distress of the petitioner persuasive as to the presence of good faith. There must be real debt and real creditors, otherwise the basic purposes of Chapter 11 would be thwarted. *In re Century City, Inc.,* 8 B.R. 25, 32 (Bkrtcy.D.N.J.1980). Thus, the courts have looked to whether a petitioner can name any unsecured creditors, *see, e.g., In re Alison Corp.,* 9 B.R. 827 (Bkrtcy.S.D.Cal.1981); whether the debtor has any assets to protect; and whether he is engaged in an ongoing business. *See, e.g., In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bkrtcy.N.D.Ca.1980); *In re Washington Funding Corporation,* 13 B.R. 216 (Bkrtcy.E.D.N.Y.1981).

*Furness v. Lilienfield,* 35 B.R. 1006, 1012 (D.Maryland 1983).

---

**3.** Counsel for the debtors has argued that notice was insufficient. However, the only creditor and party in interest is the Bank, who did not complain, was well represented and, indeed, had its own motion to dismiss heard. Even if

there were other creditors by way of intercompany debt, those creditors are the debtors themselves, *see* note 3 *infra,* who were obviously well represented at the hearing.

■ In the case at bar, the debtors have failed to meet the burden of proving good faith. *In re O'Loughlin*, 40 B.R. at 708. Probber NY's only assets are its stock in its subsidiaries. It has no employees, nor any history of operations for over thirty years. All of its debts are in the form of guarantees to the Bank with no other creditors.[4] Harved also has no employees, nor any substantial operating history. Its only assets are the real estate in New York and in Fall River, Massachusetts, for which rent on a net, net, net basis is received only for the New York property. Again, its only creditor is the Bank which holds a mortgage on the debtor's property in Fall River. While no rent is paid by Probber MA., the rental value of the premises is some $270,000 a year, greatly in excess of the expenses paid by Probber MA and, certainly, no more than it would pay on a net, net lease, to say nothing of the $5,000 per month it receives from the New York property rentals. So, it is clear that Probber MA, as sister corporation, has been diverting Harved's assets for years and Harved, on any inter-company accounting, is a creditor of Probber MA, as of the date of filing, and the records of Probber MA so indicate. In short, neither debtor is engaged in any viable business operation, nor have they proven how its one "unsecured" creditor will benefit from its filing and eventual "reorganization."

Further, the debt of Harved is the subject of state court proceedings where the Bank has moved to foreclose upon their mortgage and to restrain the debtor from disposing the proceeds of any sale of the New York property. The debtor has countered with claims of contract breaches and lack of consideration for the underlying guarantees. This litigation, which encompasses all of Harved's debts, is a controversy between two individuals involving state law. There is little reason to expect this to be better litigated in Federal Bankruptcy Court. Indeed, in light of *Northern Pipeline Construction Co. v. Marathon Pipe*

*Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and the Bankruptcy Amendments and Federal Judgeship Act of 1984, these matters should be litigated in state court. *In re Coastal Cable T.V., Inc.*, 709 F.2d 762, 765 (1st Cir.1983), 28 U.S.C. § 1334(c)(1). Counsel for the debtors and counsel for the Creditor's Committee of Probber MA argue that failure to litigate its defenses may prove to be fatal to the reorganization of Probber MA. It is undisputed that Probber MA is a debtor with real debts, assets, and employees, and a right to utilize the protection of Chapter 11, but it is not the debtor in question, and its creditors, except for the Bank, are not their creditors.

An obvious but superficial distinction may be made between some of the dismissal cases and these two cases, namely, that neither Harved Realty Corp. nor Harvey Probber of New York are recent creations. That is not only true, it further emphasizes the distinct and separate identity of each corporation. But, more to the point, the rationale of dismissal, namely, the essential purpose of Chapter 11 being abused or perverted, is equally applicable.

While individuals as well as corporations may file a Chapter 11, the essence of the chapter is business reorganization of some sort. Its justification is the public interest in preserving jobs, and something roughly described as business activity which will, hopefully, be taxable while promoting to the extent possible an equitable distribution for creditors and investors. However loose this description, it clearly was not intended as an alternate forum for private disputes that only involved the disputants for which there was a well established albeit less expeditious forum. *In re Nancant, Inc.*, 8 B.R. 1005 (Bankr.D.Ma.1981).

At hearing, counsels for the debtors and Probber MA's Creditor's Committee argued that the three debtors were treated as one debtor by the creditors of Probber MA.

---

**4.** At hearing, counsel alleged other creditors existed. That was revealed as intercompany debt between the debtors that did not exist.

Although two witnesses were examined, they did not support such a contention. Specifically, their testimony indicated nothing except that they dealt with Probber MA, alone. Indeed, a Dunn & Bradstreet report of Probber MA, submitted by one of the customers, notes at the very top of its report:

DO NOT CONFUSE WITH PROBBER, HARVEY INC (NY CORP):

PROBBER, HARVEY SHOWROOMS INC.

and the same report listed Harvey Probber of Mass. as a tenant, not an owner. The three corporations kept separate books and filed separate tax returns. They were carefully created and kept separate in order to obtain certain tax benefits and a similarity of officers or a present potential advantage cannot be used to pretend that three separate entities which were deliberately so created and legally exist no longer should be considered as separate.

Counsel argues that Harved and Probber NY would be disadvantaged because of the invalid guarantees and mortgages but the problems of consideration in guaranteeing a sister corporation's debt can be litigated in the state court as well as in the bankruptcy court; there is no special bankruptcy expertise in that basic contract problem. As to the potential preference defense on the mortgage, there is, first of all, a question of whether or not there could be a preference, since one of the requirements of 11 U.S.C. § 547(b)(5) is that the creditor got more than it would get on liquidation. Since the Bank was the only creditor, if indeed it is a creditor, the result would be the same. However, not wanting the matter to rest there, the Court gave counsel for the debtor and counsel for the Probber MA's Creditor's Committee an opportunity to brief the issue of a preference as being a basis for a Chapter 11 and neither they nor the Court's independent search could find any such authority. In fact, what little reference there is in the Code, seems to point in the opposite direction. *See,* 11 U.S.C. §§ 304(c)(3) and 305(a)(2)(B). Obviously, Congress was aware of the potential

of preference and chose only to make it a ground in foreign proceedings.

Finally, counsel for the debtors relies heavily on the Second Circuit Court of Appeals, *Gusam Restaurant Corp.,* 737 F.2d 274, 11 B.C.D. 1351 (2d Cir.1984) which ruled recently that a bankruptcy court may not *sua sponte* convert a proceeding from Chapter 11 to Chapter 7 under 11 U.S.C. § 1112(b).

In short, the legislative intend—as evinced by the drafters' concern with excessive judicial entanglement in administrative matters, the eventual selection of the House version over the Senate version of section 1112(b), and the sponsors' statements as to the purpose and meaning of the phrase "on request of a party in interest"—is not contradicted, and indeed, is furthered by permitting the bankruptcy court to act under section 1112(b) only upon request by a party in interest. (footnote omitted)

737 F.2d at 277, 11 B.C.D. at 1353. This opinion deals with a quite different concept and quite naturally, therefore, does not deal with the relevant history or bankruptcy provisions dealing with *sua sponte* dismissal. More significant, there is relevant authority in this circuit which sanctions *sua sponte* dismissal, *In re Coastal Cable T.V., Inc.,* 709 F.2d 762 (1st Cir.1983).

*Sua sponte* dismissals have been sanctioned by a variety of courts. *See, e.g., In re Coastal Cable T.V., Inc.,* 709 F.2d 762 (1st Cir.1983); *Furness v. Lilienfield,* 35 B.R., 1006 (D.Maryland 1983); *In re East Town Properties,* 31 B.R. 507 (Bankr.E.D. Wis.1983); *In re Coram Graphics Arts,* 11 B.R. 641 (Bankr.E.D.N.Y.1981); *In re Century City, Inc.,* 8 B.R. 25, 29 (Bankr.D.N.J. 1980); *In re Stahl, Asano, Shigetomi & Associates,* 7 B.R. 181, 186 (Bankr.D.Hawaii 1980); *In re Fast Food Properties, Ltd.,* 5 B.R. 539, 2 C.B.C.2d, 1159 (Bankr.C. D.Cal.1980); *see also, Landis v. North American Co.,* 299 U.S. 248, 254–5, 57 S.Ct. 163, 165–6, 81 L.Ed. 153 (1936); *Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (duty of the court to see

that jurisdiction is not exceeded); *Banque de Financement v. First Nat'l Bank of Boston,* 568 F.2d 911 (2d Cir.1977); *Porterfield v. Gerstel,* 222 F.2d 137 (5th Cir.1955); *In re Ettinger,* 76 F.2d 741, 742 (2d Cir. 1935) ("Also, it is the duty of the court *sua sponte* when it believes its jurisdiction may have been imposed upon to inquire into the facts and act in accordance therewith.") *In re Nikron, Inc.,* 27 B.R. 773, 777 (Bankr.E.D.Mich.1983); *In re Kors, Inc.,* 13 B.R. 676, 680 (Bankr.D.Vt.1981) ("A Bankruptcy Court has the inherent power and duty under this section to inquire into the good faith of a debtor seeking Chapter 11 relief."); *In re Washington Funding Corp.,* 13 B.R. 216 (E.D.N.Y.1981); *In re Gale,* 8 B.R. 960, 963, 7 B.C.D. 292, 3 C.B.C.2d 765 (Bankr.D.Maryland 1981); *In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bankr.N.D.Cal.1980); *In re Pioneer Warehouse Corp.,* 2 B.R. 1, 9 (Bankr.E.D.N.Y. 1979); *In re Saint Matthew Lutheran Church of Irvine, California,* 6 B.C.D. 578 (Bankr.C.D.Cal.1980). To quote one of the more detailed passages:

Section 1112(b) is not to be read in a vacuum. Any construction of section 1112(b) cannot ignore the legislative background that led to its enactment. "[T]o follow blindly the plain meaning of a statute without regard to the obvious intention of Congress would create an absurd result in accord with neither established principles of statutory construction nor common sense." *In re Adamo,* 619 F.2d 216, 219 (2d Cir.1980). Both the House and Senate recognized that "bankruptcy affects too many people to allow it to proceed untended by an impartial supervisor" whether by a bankruptcy judge, the United States Trustee or some other entity. It is reasonable to conclude that Congress did not intend to place the bankruptcy judge "on a pedestal watching the estates under his jurisdiction . . . dissipate themselves through lack of supervision." Congress did not intend, at least in non-pilot districts, that bankruptcy judges sit idly by and blithely ignore abuses that could lead to the compromise of the bankruptcy system and the integrity of the court. A court has the inherent power and duty to control its docket, to preserve its integrity, and to insure that the legislation administered by the court will accomplish the legislative purpose. In *re Coram.* A statute is not to be applied "strictly in accord with its literal meaning where to do so would pervert its manifest purpose." *In re Adamo,* 619 F.2d at 222. Based upon the foregoing reasons, it is the holding of this court that a court has the sua sponte power to convert or dismiss a chapter 11 case. (footnote omitted).

*In re Nikron, Inc.,* 27 B.R. 773, 776–77. Section 1112(b) is not the only basis for dismissal. Additional authority would appear to lie in 11 U.S.C. § 305:

§ 305. Abstention.

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, *at any time if—*

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

(2)(A) there is pending a foreign proceeding; and

(B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, *is not reviewable* by appeal or otherwise. (emphasis added).

This section would appear to be applicable for *sua sponte* dismissals:

Under the Bankruptcy Act of 1898, the bankruptcy court, without express statutory authority, dismissed bankruptcy cases which were filed improperly or for an improper purpose . . . It would appear then that a court of bankruptcy has always had the inherent power to dismiss a case which imposed upon its jurisdiction. The whole thrust of the Bankruptcy Reform Act of 1978 is to expand the jurisdiction of the bankruptcy court, not

to restrict it. It follows that 11 U.S.C. Section 305 does not restrict my power to dismiss, but rather enlarges it.

*In re Fast Foods Properties, Ltd.*, 5 B.R. 539, 540 (Bankr.C.D.Cal.1980); *but see, In re Century City, Inc.*, 8 B.R. 25, 29–30 (Bankr.D.N.J.1980), citing legislative history at H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 325 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6281. Debtors' counsel and Creditors' Committee counsel have argued that § 305 is inappropriate because it is not in the best interest of the debtor. However, it is only Probber Ma's interest which is not served by the dismissal of Probber NY's and Harved's petitions. Indeed, the interests of the debtors involved, Probber NY and Harved, are better served by the state court proceedings, where there is no jurisdictional question. Moreover, there is additional statutory authority in 28 U.S.C. § 1334(c)(1), recently added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, § 101(a):

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

It should be noted that former 28 U.S.C. § 1471(d) (predecessor to 28 U.S.C. § 1334(c)(1)), although similar to § 1334(c)(1), did not contain the phrase "in the interest of comity with State courts or respect for State law ...."

In sum, there is ample statutory and case law which this Court chooses to follow. To follow otherwise, could lead to abuse of legal process. That is particularly relevant to the bankruptcy courts. The Court is mindful that Judge Friendly who sat on the panel deciding *In re Gusam Restaurant Corp.*, commented in another case:

> A referee in bankruptcy is not simply an umpire calling balls and strikes. He has an affirmative responsibility for the proper handling of the estate, and that is

not always discharged merely by ruling on papers the parties have presented to him.

*In re Ira Haupt & Co.*, 398 F.2d 607, 612 (2d Cir.1968).

This Court finds those words as relevant today as they were sixteen years ago. This is particularly relevant in light of the Court's "responsibility to maintain public confidence in the legal profession." *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 335 (Bankr.E.D.Pa.1982). It should, of course, be borne in mind that as to Harved, a motion to dismiss was filed by the debtor's sole creditor.

While not relevant to these dismissals and the effect on these two cases, Probber MA argues that the foreclosure of the real estate would have an adverse, if not fatal effect, on its ability to reorganize. That is a separate issue and one that the Court would address on an appropriately filed pleading. Without prejudging the issue, it certainly would be possible for the Court to order the maintenance of the status quo by restraining the foreclosure of the Fall River property until the dispute between Harved and the Bank over the validity of the guarantee and mortgage is determined in a court of appropriate jurisdiction.

Had the state court not enjoined the distribution of the proceeds of the sale, the Harved Chapter 11 would not have been filed. What is really at stake is an attempt to transfer a dispute between the Bank and the property owner, a matter traditionally handled by state courts. Transfer to the Bankruptcy Court would not benefit Harved, nor its creditor, but would benefit its sister corporation, Harvey Probber of Massachusetts, who sought to borrow $400,000 of the sale proceeds and was frustrated by the state court restraining order. These filings are not in good faith for that reason and, for all of the other reasons set forth, this Court abstains from further proceedings in Harved Realty Corp. and Harvey Probber, Inc. of (New York). These two Chapter 11 petitions are dismissed.