**In re COOK et al.**

**In re WEST PINES APARTMENTS.**

**DVINSKY et al. v. COOK et al.**

No. 6798.

Circuit Court of Appeals, Seventh Circuit.
May 23, 1939.

Rehearing Denied July 14, 1939.

982

Meyer Abrams, of Chicago, Ill., for appellants.

Roy O. West, Samuel E. Hirsch, William M. Klein, Julian H. Levi, Ralph R. Hawxhurst and Bernard Hoban, all of Chicago, Ill., for appellees.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This appeal, allowed by this court, is from an order of the District Court entered October 15, 1938 in a 77B, 11 U.S. C.A. § 207, bankruptcy proceeding, overruling appellants' exceptions to the Master's report on the issues of good faith and jurisdiction, and sustaining appellees' exceptions to that part of the report recommending dissolution of a restraining order which enjoined the further prosecution of an accounting suit in the Circuit Court of Will County, Illinois, against appellees, William C. Cook and James S. McClellan.

Appellants' attack is predicated upon the alleged lack of proof to sustain the allegations requisite to confer jurisdiction in the instant proceeding, namely: (1) proper legal interest in the petitioning creditors, (2) insolvency or inability to pay debts as they mature, and (3) good faith. A prior phase of this same case was before us in In re Cook et al., 7 Cir., 101 F.2d 394, where some of the legal problems here presented were discussed to which reference will hereafter be made.

The property sought to be reorganized is a nine-story apartment hotel called the West Pines Apartments, located in Joliet, Illinois. A bond issue of $250,000 had been issued thereon in April, 1923. Foreclosure of this issue was begun in the State Court in July, 1926, which resulted in the entry of a foreclosure decree in November, 1928. The decree expressly found that the attorneys for the complainant in the foreclosure suit were not entitled to be compensated for services therein rendered. September 21, 1928, a deposit agreement was entered into between the bondholders and a committee composed of Cook and McClellan, appellees, and one, Kirby. The latter was succeeded by appellee, Knutson, as a member of the Committee. . At the foreclosure sale in February, 1929, the Committee for the Bondholders purchased the property for $237,864.04, upon which deposited bonds in the amount of $198,500 (of $200,000 outstanding) were applied. Nondeposited bonds in the amount of $1500 were paid. The court, in the foreclosure decree found certain liens upon the premises in the amount of some $30,000 which were prior to the mortgage bond issue. Appellees, in order to discharge these liens, and to care for other items of expense, borrowed from the Garard Trust Company, and in February of 1930, were indebted to said concern in the amount of $64,069.78, which included an item of $12,500 for legal fees incurred in the foreclosure proceeding. In the meantime, a receiver was appointed for the Garard Trust Company. The property, at the expiration of the redemption period, was conveyed to the Chicago Title and Trust Company, as trustee by reason of a trust agreement, the beneficiaries of which were appellees, Cook and McClellan, as trustees, under the Bondholders' Protective Agreement, and the Receiver for the Garard Trust Company. By the trust agreement, the Receiver of the Garard Trust Company was given a lien upon the premises in controversy and the income therefrom, superior to that of the certificate holders (formerly bondholders).

In May, 1930, by order of the District Court, the Chicago Title and Trust Company, as Receiver of the Garard Trust Company, sold the interest of the latter, including certificates representing bonds in the amount of $38,100 to one, Busbey for $26,100, which he in turn sold to appellees for $33,500. The money to pay for this purchase was obtained by placing on the property a new mortgage in the amount of $38,000. The bonds or certificates in the amount of $38,100 were not cancelled but were sold to one, Pope for $5000 on July 21, 1935. This transaction was not entered upon the books of the trust estate and the proceeds were divided among Cook, McClellan and a Mr. Pease who was the son-in-law of Cook. It appears that an attempt was made in November, 1937, to undo this transaction by the repurchase from Pope of the $38,-100 in certificates and that they were reacquired by the Committee, although it does not appear that they were cancelled. The certificate holders were at no time informed concerning this transaction.

On June 4, 1937, appellant Rifas submitted to Cook a proposition to purchase the property for the amount of $129,000. Cook accepted a deposit of $5000, conditional on the consent of the certificate holders, to be obtained within 30 days. This offer was not submitted to the certificate holders and the deal was not made.

On October 7, 1937, a complaint was filed in the State Court by certain certificate holders against appellees, Cook and McClellan, accusing them of misconduct, seeking therein their removal, an accounting and other relief. At the hearing thereon it was claimed by Cook and McClellan that the sale of the $38,100 in certificates was bona fide and that Pope was the owner of the certificates, and it was disclosed that Cook had offered the certificates for sale. Cook and McClellan were enjoined by the court from selling such securities, were removed from the management of the property and a receiver appointed. On November 26, 1937, an order was entered in the State Court directing Cook and McClellan, as the Bondholders' Protective Committee, to file a final account and report of their acts and doings within 60 days. Prior to the expiration of such period, an application was made by their attorneys for further time in which to prepare the account and an extension was granted to and including the 5th day of February, 1938. The property had long been in litigation in the State Court, a further account of which would throw no light on the questions here presented.

On January 25, 1938, 10 days prior to the date when the accounting was due in the State Court, appellees, as trustees

under the Bondholders' Committee, filed a voluntary petition in the instant proceeding and obtained an order enjoining the State Court proceeding. The petition for reorganization contains a recital of the various proceedings in that court; alleged that the debtor was unable to meet its debts and that the petition was filed in good faith. The receiver appointed by the State Court and certain certificate holders sought unsuccessfully to attack the jurisdiction of the Federal Court. An appeal from the action of the District Court in this respect, was before us in In re Cook et al, supra. We sustained the action of the court, in approving the petition as properly filed. In other words, we there held that the petition contained the proper and necessary jurisdictional averments. It is now contended by appellees that our previous holding is conclusive on the essential questions here presented. We do not so regard it. Subsequent to the action of the District Court in approving the petition as properly filed, answers were filed denying the essential allegations of the petition. The matter was referred to a Master in Chancery who heard testimony on the issues thus raised. The burden was upon appellees to sustain the allegations of the petition. Hickey v. Ritz-Carlton Restaurant & Hotel Company, 3 Cir., 96 F.2d 748, 751.

The question here presented is not the sufficiency of the allegations of the petition, heretofore decided in the affirmative, but the sufficiency of the evidence adduced in support of the same.

■ We shall now consider the various reasons argued by appellants in support of their contention that the court below was without jurisdiction. It is first claimed that appellees, as petitioners, in the reorganization proceeding were the owners of neither the legal or equitable title and they, therefore, had no such title or interest as would permit them to institute such a proceeding. This question was considered and decided in In re Cook, et al, supra, in favor of appellees. That decision became the law of the case which the District Court was obliged to follow. It did not err in so doing.

■ The second question has to do with the "insolvency or inability to pay debts as they mature." We are of the opinion that the evidence does not support the allegation in this respect. The only indebtedness to which the Master, in his report, makes reference, is the mortgage on debtor's property in the amount of $38,000, the legality of which was under attack in the State Court, but assuming its validity, it was the only indebtedness upon a property for which appellees, on June 4, 1937, about eight months prior to the filing of the reorganization petition, had received a cash offer of $129,000. It is not and could not be contended successfully that the original bondholders were creditors as their bonds were surrendered and merged in the property at the time of the foreclosure sale. In place of such bonds, they were issued certificates in the trust which gave them an interest in the property, but not as creditors. Bryan v. Welsh, 10 Cir., 72 F.2d 618, 620. In fact, there is no definite allegation of indebtedness contained in the petition other than that concerning the $38,000 mortgage. There is a general statement to the effect that the debtor is obligated to appellees for services and expenses rendered as trustees under the deposit agreement, without mentioning the amount. Neither is there any proof as to such amount, and even if there were, we doubt if such an indebtedness could be taken into consideration for the purpose under discussion. In re Piccadilly Realty Company, 7 Cir., 78 F.2d 257, 260. The petition also contains allegations concerning two suits pending in the State Court against appellees with reference to the involved property. The only testimony with reference to these suits is that of appellee, McClellan, to the effect that he had investigated their merits and that "they were wholly frivolous and had no merit whatever," and that he had been advised by his attorney to the same effect and that the suits should be dismissed on motion. We are of the opinion that such suits afforded no support in proof of insolvency.

■ The Master concluded that the debtor was "unable to meet its debts and its obligations as they mature as alleged in the petition." The only testimony offered in this respect, however, is to the effect that an interest installment on the mortgaged indebtedness due in the month prior to the filing of the petition, was not paid. This was not for lack of funds, however, but because of the fact that the Receiver in the State Court had been enjoined from the payment of the interest on this mortgage, the legality of which had been as-

sailed in that court. We think there is no substantial evidence to support the finding of the Master and approved by the court, either that the debtor was insolvent or unable to meet its debts. Clearly, there was no insolvency and we are of the opinion that the inability of a debtor to meet an obligation by reason of a restraining order where the validity of the obligation itself is under attack is not such an inability to meet obligations as is contemplated by the Statute. Otherwise, a corporation involved in litigation in a State Court, irrespective of its financial resources or the amount of cash on hand, where restrained by such court from the payment of its obligations, pending the result of the litigation, would be eligible to initiate a reorganization proceeding under the guise of inability to meet its obligations.

The third question has to do with the failure of the proof to sustain the allegation of good faith. It is not difficult for us to conclude that appellants' contention in this respect must be sustained. Appellants charge appellees with numerous acts of misconduct in support of their charge of a lack of good faith. Inasmuch as our conclusion will require a dismissal of this proceeding in the District Court, from which it will follow that the State Court will resume jurisdiction, we expressly refrain from a discussion or expression of opinion as to their merits. We think it not improper, however, for us to say that the facts and circumstances appearing in the record afford ample justification for the action of the State Court in ordering appellees to render an accounting of their stewardship as trustees.

After obtaining the indulgence of that court to the extent of receiving an extension of time in which to file such report, they, ten days prior to the expiration of such time, filed in the District Court the instant proceeding. This, while a strong circumstance, inconsistent with good faith, might not be sufficient in itself or might be explained, but the hearing discloses what the circumstance indicates, that the purpose of invoking the jurisdiction of the Federal Court was to escape the order of the State Court with reference to an accounting. A letter was introduced, written by appellee, Cook, shortly after the institution of the reorganization proceedings which, after referring to a decision of the State Court, states:

"To counteract this decision the committee applied to Judge Woodward, U. S. District Judge, under 77B and Judge Woodward appointed Ralph Hubbard, 120 South LaSalle Street, Chicago, to take charge of the building." Cook's attorney, who prepared the petition in the reorganization matter, testified: "I cannot reconcile the statement in the letter that to counteract this decision the Committee applied to Judge Woodward, with my statement that the proceedings in 77B were not commenced for the purpose of escaping the jurisdiction of Judge Wilson's Court." Thus, it appears plainly that the instant proceeding was instituted not for the purpose of obtaining benefits afforded by the Act to a corporation in financial distress, but to enable appellees to escape the jurisdiction of another court where the day of reckoning for their alleged acts of misconduct was at hand. It is our conclusion that a Federal Court should not extend its jurisdiction under such circumstances. To do so is to furnish a haven of repose for one accused and called to account by a court of competent jurisdiction. It is argued that an accounting may be required in the Federal Court as effectively as in the State Court. No doubt this is true, but it does not dispel appellees' motive in shifting jurisdictions under the circumstances presented. Their conduct and the demonstrated purpose of coming into the Federal Court was a fraud, not only upon that court, but the State Court as well. Harkin v. Brundage, 276 U. S. 36, 56, 48 S.Ct. 268, 72 L.Ed. 457. Whenever want of good faith appears, the debtor's petition should be dismissed. First National Bank v. Conway Road Estates Company, 8 Cir., 94 F.2d 736, 739.

Appellees stress the finding of the Master "that this property has been in continuous litigation in the State Courts for a period of approximately fourteen years; that during all that time the property involved has been and still is harassed by lawsuits of persons claiming title thereto, or other interest therein. It is apparent to the Master that if there ever was a property in need of reorganization under the terms and provisions of Section 77B of the Bankruptcy Act, that this is such a property." Each side accuses the other of responsibility for the delay and the numerous suits which have been had in the State Court. Who is respon-

sible for the situation is not for us to determine now, but in any event, the situation in the State Court can not alone confer jurisdiction upon the Federal Court. True, in some of the cases cited by appellees, such a situation has been mentioned as disclosing a need for relief in a reorganization proceeding, but it does not follow that jurisdiction is thus acquired.

The order of the District Court is reversed with directions to dissolve the order restraining the prosecution of the accounting suit in the State Court and to dismiss the proceeding.