**In the Matter of FIRST DADE CORPORATION, Debtor.**

**Bankruptcy No. 81–2312.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

March 3, 1982.

Albert I. Gordon, Tampa, Fla., for debtor.

Irving M. Wolff, Miami, Fla., for First State Bank of Miami and City Nat. Bank of Miami.

ORDER ON MOTION TO ABSTAIN OR IN THE ALTERNATIVE MOTION TO DISMISS and ORDER ON MOTION FOR CHANGE OF VENUE

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a business reorganization case commenced on December 14, 1981 by a petition for relief under Chapter 11 of the Code by First Dade Corporation d/b/a Granada Gardens Condominiums (First Dade). The matters under consideration are a Motion to Abstain pursuant to 11 U.S.C. § 305 or, in the alternative, a Motion to Dismiss pursuant to 11 U.S.C. § 1112(b) for "lack of good faith." The Motions were filed by First State Bank of Miami (FSB) and the City National Bank of Miami (CNB), (the Banks), secured creditors who held a first and a second mortgage respectively on real property once owned by First Dade. The Banks also filed a Motion for Change of Venue pursuant to Bankruptcy Rule 116(b)(1), (2) on the ground of improper venue.

At the duly noticed hearing, the evidence presented in support of and in opposition to the Motions reveal the following:

First Dade is a Florida corporation whose principal place of business is located in Pinellas County, Florida. At the time pertinent to this controversy, First Dade was the owner of an apartment house complex known as Granada Gardens located in Opa Locka, Florida. The apartment complex was encumbered by several mortgages. The first dated August 31, 1979 was recorded in due course in the public records of Dade County, Florida. This mortgage was granted to secure an indebtedness due to FSB in a principal amount in excess of $800,000. The second mortgage was executed in favor of CNB on March 18, 1981 also properly recorded and was to secure an indebtedness in excess of $950,000. In addition, the apartment complex is also encumbered by a third mortgage, but this is not a factor to be considered at this time inasmuch as the holder of the third mortgage does not seek any relief and is not involved in the present hearing.

First Dade is also the 50% stockholder in a corporation known as First Pinellas Corporation who owns a tract of land located in Pinellas County, Florida comprising four acres, fronting on U.S. 19, a major thoroughfare. It also has an interest in a contract to purchase a complex known as La Playa Apartment Hotel located in Pinellas County, Florida. First Dade has one stockholder and currently is not actively engaged in the conduct of any business in a conventional sense.

Prior to November 17, 1981, FSB filed an action to foreclose its mortgage in the Eleventh Judicial Circuit in and for Dade County, Florida, Civ. Action No. 81–11888 CA 15. On November 16, 1981, the Circuit Judge in this foreclosure action entered a Summary Final Judgment and after having determined that there was due and owing to FSB an unpaid principal balance of $800,000 plus accrued interest in the amount of $36,285.95 from June 1, 1981 to September 1, 1981 at the rate of 18% per annum and interest from September 1, 1981 to November 16, 1981 in the amount of $42,192.15 plus insurance premiums advanced and other miscellaneous expenses including attorney fees, entered a final judgment in favor of FSB in the amount of $900,860.15. In the same action, the Circuit Court also determined that there was due and owing on the second mortgage to CNB, $918,406 plus interest and costs or the sum of $1,035,325.45.

The Summary Final Judgment directed that unless the sums found to be due to FSB and CNB are paid within three days

from the date of entry of the Summary Judgment, the Clerk of the Circuit Court shall proceed to sell the subject property to the highest bidder at a public sale on the 9th day of December, 1981. The Clerk proceeded pursuant to the direction of the Summary Final Judgment and conducted a sale on that date, at which time the holder of the second mortgage, CNB, in order to protect its interest, bid in and purchased the subject property. The Clerk promptly filed his Certificate of Sale as required by the Statute § 45.081 et seq., however, before the Certificate of Title was issued First Dade filed its petition for relief in this Court which, ostensibly brought the entire foreclosure proceeding to a screeching halt, much to the chagrin of the Banks. It further appears from the record, although it is not substantiated by proof, that the Debtor is supposed to have a readily available refinancing source, a source which is supposed to make available more than sufficient funds to satisfy both judgments in full, i.e. the judgments of FSB and of CNB. According to the testimony of the president of First Dade, the funds will be available as soon as the Debtor is able to obtain an approval by the Court to consummate the proposed refinancing arrangement. It should be noted at this point that so far no application has been presented by the Debtor for this Court's approval to borrow funds. There is evidence in this record to warrant the finding that if the complex is converted to a condominium project, and the units are sold at retail, it is possible to produce more than $4 million, more than enough to satisfy all outstanding obligations due to all parties of interest including the claims of unsecured creditors.

The Motion to Abstain is filed pursuant to § 305 of the Bankruptcy Code and is based on the proposition that the entire proceeding was instituted solely for the purpose of frustrating the holders of the first and second mortgages and to prevent them from enforcing their rights not only under the original mortgage, but also under the non-appealable final judgment of a court of competent jurisdiction.

Section 305 of the Code is a codification of a long recognized concept of a right of a court to abstain and decline the exercise of jurisdiction under appropriate circumstances. The Code expressly sets forth the conditions which would warrant abstention. It requires that before the Bankruptcy Court may abstain, the Court must be satisfied that abstention would be in the best interest of creditors and the Debtor alike and that the abstention would best serve the interest of all parties of interest rather than the interest of a particular creditor or a particular class of creditors. There is no doubt that an abstention in the present instance would be in the best interest of the moving parties, that is, the Banks. On the other hand, there is hardly any question that it would not be in the interest of this Debtor nor in the interest of the third mortgage holder and in the interest of the unsecured creditors of the Debtor whose claims appear to be in excess of $400,000. This being the case, it is evident that the abstention or dismissal under § 305 would not be warranted or justified.

However, it is also urged by FSB and CNB that the entire Chapter 11 proceeding should be dismissed in any event on the ground that it was not filed in "good faith" because the proceeding was instituted solely for the purpose of preventing the Banks from enforcing their properly acquired rights; that the Debtor has no "property" left which could support any viable reorganization, i.e. there is no longer an estate which is capable of rehabilitation under the Code. Thus, according to the Banks, either because of "lack of good faith" of the Debtor or because of the claimed obvious inability of this Debtor to effectuate a plan, a dismissal is not only warranted, but mandated by § 1112(b)(2) of the Code.

In support of this proposition, it is urged that by virtue of the Final Summary Judgment entered by the Circuit Court, all property interest of the Debtor had been foreclosed; that the Debtor has nothing left but the right of redemption of equity; a redemption right which can be exercised not by the payment of the full purchase price

paid at the foreclosure sale, but by payment of the total amounts determined to be due by the Final Summary Judgments to the Banks which are close to $2 million.

■ The right to redeem property involved in a foreclosure proceeding sometimes referred to as right of redemption of equity, has long been recognized in this State although not expressly provided for by statute. If no objection is filed to the foreclosure sale within 10 days after the Clerk filed the Certificate of Sale, the Clerk is directed to issue a Certificate of Title; serve the same on all parties of interest involved in the case; and once the Certificate of Title is issued, the sale is final and is deemed to be confirmed and the purchaser named in the Certificate becomes the legal owner of the subject property without the necessity of any further proceedings or filings of any other instruments. § 45.031(4) of the Florida Statutes. The former owner of the property may, during the 10 days, prevent the issuance of the Certificate of Title by exercising the right of redemption. Thus, there is no doubt that in this State, like in most states, eg. Michigan (MCLA) § 600.3101 et seq; (MCLA) § 600.3201 et seq, the owner of the real property retains an interest, subsequent to the foreclosure sale and has a right of redemption which permits the owner during the statutory prescribed period to redeem the property from the purchaser and the title to the foreclosed property does not pass to the buyer until the Clerk actually issues the Certificate of Title.

It has been traditionally recognized that the nature and extent of interest in real property is determined with reference to the applicable local law. There is no question that the Bankruptcy Code governs and determines the question as to whether an interest in property is or is not "property of the estate;" thus, subject to the overall jurisdiction of the Bankruptcy Court. 4 *Collier on Bankruptcy,* ¶ 541.07[1] (15th ed. 1980). It can no longer be doubted that by virtue of an expanded and all encompassing definition of the term "property of the estate" by § 541 of the Code, everything in

which the Debtor has a cognizable legal or equitable interest as of the date of the commencement of the case is "property of the estate." From all these it follows that the right to redeem a species of "property" is recognized under the State law and in turn becomes property of the estate of the Debtor so long as the period of redemption did not expire at the time the petition for relief was filed, 4 *Collier on Bankruptcy,* ¶ 541.07[3] (15th ed. 1980).

Considering this record in light of the foregoing, this Court is satisfied that the right to redeem the property was still in force at the time the case was filed and thus, this right became a "property of the estate." Therefore, it is self-evident that the contention of the Banks that there was no longer an estate, at the time this case commenced, which is a viable entity capable of rehabilitation under this Chapter, is without merit and it should be rejected.

The Banks also contend, however, that this Court should abstain or in the alternative, should dismiss this case for the Debtor's lack of "good faith" in filing the petition for order for relief under this Chapter.

It should be pointed out at the outset that unlike the pre-Code Chapter X, the Code does not expressly require an initial showing that the petition was filed in "good faith" and unlike a petition under the pre-Code Chapter X, it does not require a finding by the Court that it was filed in "good faith;" § 141–146 of the Bankruptcy Act of 1898, and the Code does not require an approval by the Court. Notwithstanding, it has been recognized that "good faith" is an implied prerequisite for the maintenance of a viable business reorganization case under Chapter 11 of the Code, absence of which would warrant a dismissal. *In re Victory Construction Company, Inc.,* 9 B.R. 549, 3 CBC 2d 655 (Bkrtcy.CD Cal.1981). Thus, one who invokes the protective provisions of the Bankruptcy laws must always do so in order to accomplish and to further the expressed and implied legislative aims of the particular Chapter of the Code and not for any other purpose. If it is a petition for relief under Chapter 11 of the Code which is

titled, "Business Reorganization," the same should only be filed for the purpose of reorganizing the business, albeit, this Chapter of the Code now permits a "reorganization" by way of liquidation of all the assets; § 1123(b)(4). From the foregoing, it appears that nothing is in the Code itself or in its legislative history which would justify a conclusion that Congress, by omitting the express requirement of "good faith," intended to do away with the safeguard against abuse and misuse of the remedial provision of the Chapter, a safeguard which has been long established and a well entrenched part of the overall bankruptcy philosophy for almost a century. Thus, "good faith" is still an implied prerequisite for the Debtor's ability to obtain a relief under Chapter 11 of the Code. *In re Victory Construction Company, Inc., supra.*

 There is nothing in this record which would warrant the finding that the purpose of this Debtor's filing of the petition for relief under this Chapter is inconsistent with the underlying purpose of the Chapter and with the rehabilitation process envisioned by Congress. Since this Court is satisfied that this petition was not filed in bad faith and was instituted for the purpose to accomplish a legitimate goal, one still must consider whether a dismissal at this stage, pursuant to § 1112(b) of the Code would be warranted. There is no evidence presented which would substantiate a finding that this Debtor is suffering a continuing loss or diminution of assets and that there is a total absence of reasonable possibility of rehabilitation, the elements required by dismissal of § 1112(b)(1). Neither is there any evidence in this record which would warrant a finding that the Debtor is unable to effectuate a plan and there is an unreasonable delay by the Debtor which is prejudicial to creditors, the requirements for dismissal under § 1112(b)(2), (3).

This leaves for consideration the Motion to Transfer the case under Bankruptcy Rule 116(b)(1), (2). There is no doubt that the Middle District of Florida is the proper venue and there is no showing that transfer would be warranted. In addition, there is no showing that the transfer would be justified under the principle of forum of non-conveniens.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Abstain under § 305 be, and the same hereby is, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss for lack of good faith be, and the same hereby is, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Motion to Transfer be, and the same hereby is, denied.