Colin W.E. FURNESS

v.

Gerald S. LILIENFIELD, et al.

Civ. No. Y-82-1272.

United States District Court, D. Maryland.

Dec. 22, 1983.

Paula M. Junghans, Baltimore, Md., for plaintiff.

Melvyn J. Weinstock, Neal S. Melnick, and Sidney S. Friedman, Baltimore, Md., for defendants Gerald S. Lilienfield, Ashley Investment Corp., and Honor Realty Co.

Richard A. Kramer, Oxon Hill, Md., for defendants Stephen F. Marsalek and Benchmark Land Title and Escrow Corp.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, District Judge.

On May 17, 1982, Colin W.E. Furness, a resident of the Bahamas, filed a complaint alleging a violation of the Racketeering-Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–68, and several state common-law claims in federal court under diversity jurisdiction. Named as defendants were Gerald S. Lilienfield, one other individual, and several corporate entities. A scheduling order was issued on August 10, 1982, setting the trial date for May 9, 1983. After an evidentiary hearing, service of process on Lilienfield and two corporate defendants with which he is affiliated was quashed on September 1, 1982.

A second summons was prepared and served on Lilienfield on September 8, 1982. On November 19, 1982, after Lilienfield had answered the complaint, the Court informed the parties that the scheduling order of August 10, 1982 would control the preparation of the case and "the trial thereof." Defendant's delay in responding to discovery requests resulted in the imposition of a $300 fine and an Order of this Court (dated March 7, 1983) requiring a timely response. Delays in discovery and the plaintiff's motion for contempt filed April 6, 1983 prevented the trial from going forward as scheduled and a second scheduling conference was held June 14, 1983 at which time trial was scheduled for October 24, 1983, and a letter confirming the new trial date was sent to attorneys for the parties on June 16, 1983. Therefore, defendant Lilienfield (and other parties) had five month's advance notice of the May, 1983 trial date and was aware of the October trial date for more than four months.

Despite this advance notice, Lilienfield waited until one week before the trial date, October 18, 1983, to request a postponement for "recent medical problems." On October 18, 1983, the parties were informed that the trial would go forward as scheduled, noting that Lilienfield's medical problems were not recent (he had a history of high blood pressure), not "life-threatening," and not "sufficient to cause a postponement."

At the request of Lilienfield's attorney, a court-appointed doctor examined the defendant and reported on Thursday, October 20, that there was no valid medical reason to prevent the case from going forward as scheduled. One hour after learning of this fact, Lilienfield's counsel told the Court that this case could not go forward as scheduled the following Monday because he intended to file a petition for Chapter 11 reorganization (under Title 11 of the United States Code) the following day, imposing an automatic stay of any judicial proceedings against Lilienfield. 11 U.S.C. § 362(a)(1).

The petition for reorganization was filed in Bankruptcy Court for the District of Maryland under Emergency Rule 51–A of the Rules for the United States District Court, District of Maryland, and was docketed by the Clerk of that court as 83–A–1562.

Because of the repeated delays caused by Lilienfield and the circumstances surrounding his filing of the bankruptcy papers—particularly the fact that the petition was not filed until the eve of the trial, immediately after his request for postponement was denied—this Court in an Order dated October 24, 1983, withdrew the reference of the Chapter 11 petition to the bankruptcy court, and scheduled the case for a hearing on October 27 to determine whether the automatic stay of the proceedings in Y–82–1272 should be lifted—or the Chapter 11 petition dismissed—because of the questionable validity and good faith of the petition filed in 83–A–1562.

WITHDRAWAL OF REFERENCE

The basis of this Court's withdrawal of the reference of *In re Lilienfield* to the bankruptcy court is a logical starting point, and any discussion of the relationship between this Court and the Bankruptcy Court for this District must begin with a discussion of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

For years, bankruptcy matters were handled in United States courts by bankruptcy referees, whose final orders were appealable to United States District Courts, and from whom the district court could withdraw cases. *See* 458 U.S. at 53, 102 S.Ct. at 2862. Under the Bankruptcy Reform Act of 1978, bankruptcy referees were elevated to the status of judges. Although not clothed with the protections of Article III judges as to tenure and salary, bankruptcy judges were vested under the 1978 Act with "all the powers of a court of equity, law and admiralty," except the powers to enjoin another court or to punish certain acts of criminal contempt. 458 U.S. at 55, 102 S.Ct. at 2862. In *Northern Pipeline,* the Supreme Court held that this broad grant of power to bankruptcy court judges was unconstitutional, since the jurisdiction of

the bankruptcy courts had been expanded to include all "civil proceedings arising under Title 11 [the Bankruptcy title] or arising in or related to cases under Title 11," and the judges were not clothed with the constitutional protection afforded Article III judges.

> We conclude that § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts. 458 U.S. at 87, 102 S.Ct. at 2879–80.

The Supreme Court gave only prospective effort to its decision on the constitutionality of the newly instituted network of bankruptcy courts, staying the judgment first until October 4, 1982, and then again delaying the effect of the judgment until December 24, 1982. The delay was established to "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication." 458 U.S. at 88, 102 S.Ct. at 2880. Congress has not yet acted to meet the Supreme Court's edict, and this Court, like many—if not all—federal district courts, has adopted an emergency rule, Rule 51–A of the local rules, to deal with what became an administrative headache.

Under Rule 51–A, Title 11 (bankruptcy) cases are automatically referred to the bankruptcy court, but the district court retains substantial power over the case in order to avoid the constitutional flaws of the system which Congress established. The rule, which is effective until March 31, 1984, or until Congress enacts "remedial legislation," provides, in Section (c):

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) *The reference to a bankruptcy judge may be withdrawn by the district*

*court at any time on its own motion or on timely motion by a party ... If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court's usual system for assigning civil cases.* [emphasis added]

Predictably, there are few cases interpreting this rule, particularly that portion of the rule granting the district court the authority to withdraw the reference to the bankruptcy court and reassign the case to a district court. However, the rule—on its face—establishes a procedure whereby bankruptcy matters are automatically referred from the district court to the bankruptcy court, and expressly allows the district court to withdraw the reference "at any time on its own motion or on timely motion by a party." Under this rule, the Court has withdrawn the reference of *In re Lilienfield* to the Bankruptcy Court and has ordered that the case be transferred to this Court.

This Court is not the first district court to take such action. In *NLT Computer Services v. Capital Computer Systems,* 31 B.R. 960 (M.D.Tenn.1983), a federal district court was sitting on an interpleader case. On the morning of the day of a hearing, two of the creditors seeking funds deposited with the court filed an involuntary petition against the debtor, who had been made a party to the case. The court determined that the automatic stay imposed by 11 U.S.C. § 362(a) did not apply to an interpleader action, and held, as an alternate ground, that it had the power to withdraw the reference of the case to a bankruptcy court, revoke the stay with regard to the matter before it, and then refer the remainder of the case to the bankruptcy court.

... the rule gives this Court the power to withdraw the reference at any time upon its own motion. Therefore, this Court, at

the hearing, withdrew the reference to bankruptcy court regarding the involuntary petition filed against the debtor, lifted the automatic stay (if it applies at all) as it pertains to this interpleader action; and remanded the bankruptcy case to the bankruptcy court for any further proceedings in this matter. 31 B.R. at 962.

This Court has watched with alarm as major corporations have filed for Chapter 11 reorganization or threatened to file Chapter 11 petitions to evade existing labor contracts, or to invoke the automatic stay provision to evade pending litigation. As will be discussed hereafter, the Court considers such practices to be a gross abuse of the bankruptcy proceedings. Chapter 11 was designed to give those teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability. And the purpose of the automatic stay is to preserve a debtor's assets and permit an orderly, as opposed to chaotic, distribution or reorganization. *See Matter of Holtkamp,* 669 F.2d 505, 508 (7th Cir.1982). The automatic stay was not intended to grant defendants a last-minute escape chute out of pending civil litigation.

■ Accordingly, based on the publicity surrounding these abuses of the bankruptcy procedure and the apparent show of bad faith on the part of the debtor/defendant in these cases, this Court acting under Rule 51–A has withdrawn the reference and reassigned the case to this Court.

Now that the matter is before this Court, two decisions must be made: (1) whether the automatic stay imposed in connection with *In re Lilienfield* should be lifted or modified with regard to *Furness v. Lilienfield,* and (2) whether the voluntary Chapter 11 petition should be dismissed in *In re Lilienfield.* Both decisions will be governed by whether the petition was filed in good faith or was filed simply to invoke the automatic stay accompanying the petition. Consequently, a discussion of the law governing the good faith required of petitions in bankruptcy will be necessary. But, as a

preliminary matter, the propriety of this Court's considering—*sua sponte*—dismissal of the petition or termination of the stay will be addressed.

## DISMISSAL OF CHAPTER 11 PETITION

As noted, this Court has withdrawn the reference of Lilienfield's Chapter 11 petition to the bankruptcy court *sua sponte,* which is expressly authorized by Rule 51–A. This Court will consider dismissal of the petition filed under Chapter 11 *sua sponte.* There has been a showing of apparent bad faith on the part of the defendant/debtor, and this Court has the power—indeed, the obligation—to monitor the bankruptcy proceeding now before it.

The authority of this Court to dismiss a Chapter 11 petition springs from 11 U.S.C. § 1112(b), which provides (in part):

(b) Except as provided in subsection (c) of this section, or request of a party in interest, and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . for cause . . .

Although the statute seems to require the "request of a party in interest" to initiate a dismissal proceeding, bankruptcy courts have not hesitated to act *sua sponte* where dismissal is appropriate. *In re Stahl, Asano, Shigetomi & Associates,* 7 B.R. 181, 186 (Bkrtcy.D.Hawaii 1980), *Matter of East Town Properties,* 31 B.R. 507 (Bkrtcy.E.D. Wis.1983), *In re Century City, Inc.,* 8 B.R. 25, 29 (Bkrtcy.D.N.J.1980). These courts, in interpreting the language of § 1112(b) have decided that preventing a court from dismissing petitions *sua sponte* would deny a court its "inherent power and duty to control its docket, to preserve its integrity, and to insure that the legislation administered by the court will accomplish its legislative purpose." *Matter of Nikron, Inc.,* 27 B.R. 773, 777 (Bkrtcy.E.D.Mich.1983). Such an outcome would "create an absurd result in accord with neither established principles of statutory construction nor common sense." *Id.* at 776–777.

■ Courts also have a duty to determine whether a Chapter 11 petition has been filed in good faith. *In re Kors, Inc.,* 13 B.R. 676, 680 (Bkrtcy.D.Vt.1981) ("A bankruptcy court has the inherent power and duty under this section to inquire into the good faith of a debtor seeking Chapter 11 relief.").

■ Coupling these two duties—that of monitoring the cases on the docket with that of determining the good faith of petitioners in bankruptcy—this Court has the authority, and the obligation under these circumstances, to inquire *sua sponte* into the good faith of the petitioner in this case, with regard to possible dismissal of his Chapter 11 petition.

## LIFTING OF AUTOMATIC STAY

The law on the propriety of a court raising on its own motion questions of good faith is no different with regard to the lifting of the automatic stay. Although the procedure normally followed is for a court to act at the request of one of the parties, courts have considered and granted modifications of the automatic stay imposed under 11 U.S.C. § 362(a), *sua sponte* when the circumstances required. In *NLT Computer, supra,* the district court on its own motion withdrew the reference of the voluntary petition to the bankruptcy court, and, on its own motion, lifted the stay with regard to the matter then pending before it. The court then referred all other matters back to the bankruptcy court. 31 B.R. at 962. The court in *In re Graham,* 14 B.R. 246, 248–49 (Bkrtcy.W.D.Ky.1981), lifted the automatic stay on state court proceedings imposed by a bankruptcy petition then before it, again on its own motion. In *Paden v. Union for Experimenting Colleges,* 7 B.R. 289, 292 (N.D.Ill.1980), the district court declined to hear a matter covered by an automatic stay and referred questions concerning the stay to the bankruptcy court, but the court noted that district courts taking a "cautious approach" may, *sua sponte,* modify or vacate a stay.

■ In the light of the circumstances of this case, the Emergency Rule, and the precedent, this Court determines that it has the power to consider, *sua sponte,* lifting the automatic stay imposed by *In re Lilien-*

*field* upon *Furness v. Lilienfield,* and will do so.

## GOOD FAITH

■ Although Chapter 11 does not by its literal terms require that a petition be filed in "good faith" courts have implied such a provision to prevent abuse of the bankruptcy laws and to protect jurisdictional integrity. Courts have found that if a Chapter 11 petition is not filed in good faith, grounds exist to either vacate the automatic stay or dismiss the petition. *See In re Lotus Investments, Inc.,* 16 B.R. 592 (Bkrtcy.S.D. Fla.1981). After hearing the evidence presented at the hearing, the Court concludes that Lilienfield has not filed his petition in good faith. To prevent further abuse of the bankruptcy laws, the Court will dismiss the Chapter 11 petition. Lilienfield simply has not met his burden of showing good faith.

■ The policy and purpose behind Chapter 11 proceedings is to give business debtors a respite from impending litigation, in short "a breathing spell." H.Rep. No. 95–595, 95th Cong. 1st Sess. 340 (1977); S.Rep. No. 95–989, 95th Cong.2d Sess. 49 (1978), U.S.Code Cong. & Admin.News 1978, 5787. It serves a " 'a remedy for relief from financial distress,' B. Weintraub & A. Resnick, *Bankruptcy Law Manual* ¶ 8.07, p. 8–15, by permitting 'the rehabilitation of an ongoing business.' *In re Spenard Ventures, Inc.,* 18 B.R. 164, 167 (Bkrtcy.Alaska 1982)." *See also, In re Levinsky,* 23 B.R. 210, 215 (Bkrtcy.E.D.N.Y.1982). It should only be used for purposes of reorganizing a business. *In re First Dade Corp.,* 17 B.R. 887, 891 (Bkrtcy.M.D.Fla.1982).

As the detailed opinion in *In re Victory Construction Co.,* 9 B.R. 549, 558 (Bkrtcy.C. C.Ca.1981) states, the "good-faith" requirement has long been the policing mechanism of bankruptcy courts to make certain that those who invoke the reorganization or rehabilitation provisions of the bankruptcy law do so only to accomplish the aims and objectives of bankruptcy philosophy and policy and for no other purpose. *In re Mogul,* 17 B.R. 680 (Bkrtcy.M.D.Fla.1980).

■ Moreover, a good-faith requirement protects the jurisdictional integrity of the bankruptcy courts which sit in equity and therefore demand that a party seeking relief enter with clean hands. *See* Gaffney, *Bankruptcy Petitions Filed in Bad Faith: What Actions Can Creditors Counsel Take?,* 12 UCC L J 205 (1980). The good-faith requirement provides courts with the necessary tool to circumvent a petitioner's attempt to commit fraud upon the court. Thus, "petitioners with demonstrably frivolous purposes absent any economic reality" are forestalled from invoking the protections of the bankruptcy laws. *In re Northwest Recreational Activities,* 4 B.R. 36, 39 (Bkrtcy.N.D.Ga.1980). In short, a good-faith requirement guards against jurisdictional abuse as well as the misuse and manipulation of bankruptcy remedies. *In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bkrtcy.N.D.Ca.1980).

The recent flurry of Chapter 11 filings has convinced this Court that bankruptcy courts have not adhered closely enough to these principles of good faith. With Chapter 11 some lawyers, anxious to serve their clients at any price, have discovered a new device to further their clients' interest. Filing of Chapter 11 proceedings may relieve companies of contractual obligations which in hindsight seem disadvantageous, or it can remove the spectre of burdensome litigation costs while allowing a company to continue business as usual. Unfortunately, the benefits a company obtains through a Chapter 11 petition often carry a high price for the public. For example, with the Johns-Manville bankruptcy, victims of asbestos-related diseases may never have the opportunity of pursuing damage claims against one of the world's largest manufacturers of asbestos products. Of equal concern is the possibility that some recent bankruptcy filings may suggest that the companies, faced with the possibility that a profitable product with possible health hazards, can avoid or postpone a judicial determination of liability, or lack thereof, by a Chapter 11 filing which allows the company to continue to operate and to make a healthy profit.

**1012**

■ This Court believes that if bankruptcy courts scrutinized more strictly the intent of Chapter 11 petitioners, they could insure that Chapter 11 bankruptcies remain within the scope of the bankruptcy laws. Although bankruptcy courts have demonstrated their willingness to apply a good-faith requirement to weed out the flagrant cases of abuse, *see, e.g., In re Levinsky,* 23 B.R. 210 (Bkrtcy.E.D.N.Y.1982) (dismissal of petitions for lack of good faith warranted when an entity has been organized for the express purpose of taking advantage of reorganization provisions), they must intensify their scrutiny further. In examining a Chapter 11 petition, bankruptcy courts should make certain that the petitioner has "an honest intent and genuine desire ... to use the statutory process to effect a plan of reorganization." *In re Metropolitan Realty Co.,* 433 F.2d 676, 678 (5th Cir.1970). A Chapter 11 bankruptcy should not serve "merely as a device to serve some sinister or unworthy purpose." *Id.*

From the cases decided to date, no one factor has emerged as determinative of good faith, yet courts seem to have found several factors particularly persuasive. In *In re Eden Associates,* 13 B.R. 578 (Bkrtcy. S.D.N.Y.1981), the bankruptcy court indicated that the emphasis in determining good faith should be on the intent to abuse the judicial process rather than to delay the creditors. Likewise, in a case under Chapter 10 the Seventh Circuit ruled that a petition should be dismissed in order to prevent fraud upon the court. *In re Cook,* 104 F.2d 981 (7th Cir.1939). In that case, a state court had ordered an accounting but the debtors had obtained an extension as to when they had to file their report. Ten days before the new state court deadline, the debtors filed for bankruptcy in federal district court. At a hearing before the federal district court, letters were disclosed which indicated that the purpose of the bankruptcy filing was to escape the order of the state court with reference to an accounting. On the basis of that evidence the court stated:

> Thus, it appears plainly that the instant proceeding was instituted not for the purpose of obtaining benefits afforded by the Act to a corporation in financial distress, but to enable appellees to escape the jurisdiction of another court where the day of reckoning for their alleged acts of misconduct was at hand. It is our conclusion that a Federal Court should not extend its jurisdiction under such circumstances. To do so is to furnish a haven of repose for one accused and called to account by a court of competent jurisdiction. It is argued that an accounting may be required in the Federal Court as effectively as in the State Court. No doubt this is true, but it does not dispel appellees' motive in shifting jurisdictions under the circumstances presented. Their conduct and the demonstrated purpose of coming into the Federal Court was a fraud, not only upon that court, but the State Court as well. *Harkin v. Brundage,* 276 U.S. 36, 56, 48 S.Ct. 268 [275], 72 L.Ed. 457. Whenever want of good faith appears, the debtor's petition should be dismissed. *First National Bank v. Conway Road Estates Company,* 8 Cir., 94 F.2d 736, 739.

*Id.* at 985.

Other courts have found the financial distress of the petitioner persuasive as to the presence of good faith. There must be real debt and real creditors, otherwise the basic purposes of Chapter 11 would be thwarted. *In re Century City, Inc.,* 8 B.R. 25, 32 (Bkrtcy.D.N.J.1980). Thus, the courts have looked to whether a petitioner can name any unsecured creditors, *see, e.g., In re Alison Corp.,* 9 B.R. 827 (Bkrtcy.S.D.Cal.1981); whether the debtor has any assets to protect; and whether he is engaged in an ongoing business. *See, e.g., In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bkrtcy.N. D.Ca.1980); *In re Washington Funding Corporation,* 13 B.R. 216 (Bkrtcy.E.D.N.Y.1981).

In determining good faith, courts have also looked to the timing of a petition. For example, in *In re Century City, Inc.,* 8 B.R. 25 (Bkrtcy.D.N.J.1980), the court found the timing of the Chapter 11 filing especially indicative of bad faith, since it came only after efforts at delaying the transfer of property had failed. Similarly, in a Chap-

ter X proceeding to reorganize a debtor corporation, the district court viewed the fact that petitioners were attempting to use the proceedings as a means to simply gain time as demonstrative of a lack of good faith. *Southern Land Title Corporation v. Mitchell,* 375 F.2d 874 (5th Cir.1967). In that case, the petitioner had entered into a stipulated agreement as to dismissal. When the date for dismissal arrived, the debtor's attorneys sought to repudiate the stipulation. Without regard to the stipulation, the court dismissed the petition stating, "[t]he real purpose of this proceeding was to hold the debtor in its present status for the purpose of restraining, delaying, and hindering its creditors and to escape from proceedings in other courts, and, therefore, the petition was not filed in good faith." *Quoted in id.* at 877. On appeal, the Fifth Circuit found that the district court had acted within the limits of sound judicial discretion. *Id.*

Courts have also looked to the reasonable probability of success of a reorganization plan in determining whether a petition has been filed in good faith. *See In re Dutch Flat Investment,* 6 B.R. 470. Indeed, Lilienfield has argued that he should be given the opportunity to develop such a plan before this Court rules on the good-faith issue. However, this Court does not find it needs to consider such a plan before it reaches its conclusion. As the court in *In re Mallard Associates,* 463 F.Supp. 1259 (S.D.N.Y.1979), stated in a Chapter XII proceeding where no reorganization plan had been filed, "the content of the plan is not determinative of whether the debtor has fraudulently invoked the jurisdiction of the court." Rather the determination of fraudulent jurisdiction should be made at the outset where, as here, waiting for the plan would serve no useful purpose. *See also In re Mogul,* 17 B.R. 680 (Bkrtcy.M.D.Fla.1982) (debtor argued he was entitled to formulate a plan within the 120 days provided in § 1121(b), but the court ruled that that claim was an obvious stalling device).

When this Court examines the circumstances surrounding the filing of Lilienfield's petition for bankruptcy it can only conclude that it was filed in bad faith.

Lilienfield has not met his burden. *See In re Washington Funding Corporation,* 13 B.R. 216, 221 (Bkrtcy.E.D.N.Y.1981) (the burden of proof of good faith lies with petitioner). He has brought forth little evidence of real debt and real creditors. Indeed, he failed to even appear at the hearing before this Court concerning the propriety of the automatic stay. More significantly, the time of his petition and his actions proceeding the filing demonstrate that by invoking the bankruptcy laws he merely intended to abuse the judicial process and to commit a fraud upon both the bankruptcy court and this Court. From the beginning, these proceedings have been marked by delay. In fact, Lilienfield and his attorney were so recalcitrant during discovery that the Court imposed a fine for non-compliance in discovery matters. Moreover, even though proceedings had been set for trial before this Court for at least four months, on the even of trial, Lilienfield filed for bankruptcy. That this was a last-ditch effort to forestall and perhaps block the case before this Court is demonstrated by the fact that four days before filing his Chapter 11 petition, Lilienfield had sought a postponement in this Court on medical grounds. Only when a court-appointed doctor stated that he could attend trial did he resort to the bankruptcy courts. The inclusion of a petition to remove the case from this Court with the papers filed in the bankruptcy court erases any doubt as to his motive in turning to Chapter 11. Lilienfield simply wanted to use Chapter 11 to manipulate this Court's docket and proceedings to his liking. This Court cannot passively tolerate such actions. The Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation. This Court finds that Lilienfield filed his petition for bankruptcy with the intent to abuse the judicial process, and that it should, therefore, be dismissed.