## In re INTEGRATED PETROLEUM CO., INC., Debtor.

Bankruptcy No. 584–770.
Adv. No. 584–0124.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 19, 1984.

John A. Schwemler, Akron, Ohio, for debtor.

John N. Teeple, Alliance, Ohio, for Horvats.

John T. Wigham, Wooster, Ohio, for Perkins Drilling, Inc.

Frank Leonetti, Cleveland, Ohio, for Pioneer Resources, Inc.

Robert A. Durst, Aurora, Ohio, for Limited partners of Portage Drilling Ltd.

John K. Keller, Columbus, Ohio, for Integrated Petroleum Investors Committee.

Wallace Walker, Cleveland, Ohio, for debtor in Trumbull County Common Pleas Court.

Violet Whitman, Clerk of Common Pleas Court of Trumbull County, Warren, Ohio, for Court of Common Pleas for Trumbull County.

## FINDING AS TO RELIEF FROM STAY

H.F. WHITE, Bankruptcy Judge.

Petitions for relief under Chapter 11 of the Bankruptcy Code were filed on June 29, 1984 on behalf of the following related corporations: Integrated Petroleum Co., Inc.; Integrated Services, Inc.; and Integrated Energy Programs, Inc. The president of each of these corporations is L. Peter Olcese, a.k.a. Robert L. Price. He also filed a petition under Chapter 11 of the Bankruptcy Code on June 29, 1984.

On July 31, 1984, Integrated Petroleum Co., Inc. ("Integrated Petroleum") filed an application to remove to this court a civil action pending in the Common Pleas Court for Trumbull County, Ohio. This civil action is captioned Robert E. Horvat and Margaret M. Horvat v. Integrated Petroleum Company; Pioneer Resources, Inc.; and Perkins Drilling, Inc.; Case No. 83CV–65.

The Horvats' state court civil action was based on Integrated Petroleum's alleged breach of an oil and gas lease. The Horvats alleged that Integrated Petroleum had failed to complete and place into production certain wells which had been drilled pursuant to the lease. The Horvats asked that the lease be declared null and void and that they be declared the owners of any interest which Integrated Petroleum could claim under the lease. They also prayed for damages as compensation for their loss of royalties under the lease as well as for physical damage done to their farm. The Horvats appended to their complaint a demand for a jury trial.

In response to Integrated Petroleum's application for removal, the Horvats filed a motion requesting this court to grant them relief from stay, to remand the civil action back to the Trumbull County Common Pleas Court, and to award them adequate protection.

Integrated Petroleum filed a response opposing the Horvats' motion and the court set the matter for hearing. The court heard the matter on September 17, 1984 and September 21, 1984. At the hearing, counsel for Integrated Petroleum, John Schwemler, indicated that his client wished to assume the oil and gas lease. Accordingly, on September 25, 1984, this court ordered the debtor to elect to assume or reject its executory oil and gas lease with the Horvats within thirty days from September 24, 1984.

On October 19, 1984 Integrated Petroleum filed its motion to assume and cure its lease with the Horvats. The court set the matter for hearing on October 26, 1984. Having considered the testimony and exhibits as well as the official court file, the court now makes its Finding of Fact and Law.

## FINDING OF FACT AND LAW

1. Integrated Petroleum is in the business of drilling oil and gas wells. According to the testimony of Mr. Olcese, Integrated Services, Inc. services the wells and collects revenues attributable to the wells and disburses payments to investors. Integrated Energy Programs raises funds from investors and serves as the corporate general partner of the oil and gas limited partnerships.

2. On October 10, 1979 the Horvats granted an oil and gas lease to Pioneer Resources, Inc. This lease (debtor's Exhibit A) covered approximately 600 acres of property owned by the Horvats. Under the terms of the lease, the lessee had the right to designate one legal drill site per each 40 acres. Thus, the lessee was permitted a total of 15 well sites under the lease.

3. On October 15, 1979 Pioneer Resources assigned the Horvats' lease to the debtor, Integrated Petroleum. The Horvats ratified this lease on November 15, 1979. On October 12, 1980 the Horvats executed a written amendment to the lease. (For purposes of this opinion "lease" shall refer to the Horvats' lease assigned to Integrated Petroleum as amended.)

4. The lease required Integrated Petroleum to commence six wells by November 1, 1980. Thereafter it was obligated to drill a minimum of one well for each succeeding six-month period. In the event the lessee failed to meet these terms of the lease, the lessee was required to release all land covered under the lease except for the forty acres surrounding each drilled well.

5. The lease also provided that the lessee would have the right to surrender the lease or any part thereof.

6. Integrated Petroleum was obligated under the terms of the lease to pay for all damages to crops and to pay for or repair all physical damage caused by its drilling operations.

7. Integrated Petroleum did designate fifteen well sites on the Horvats' property subject to the lease. (See debtor's Exhibit B.) Five of the well sites are designated as "completed"; they produce or are capable of producing gas. Six of the well sites are designated as "drilled"; these wells are commenced, drilled and cased but have not

yet been placed in production. The remaining four well sites have not been drilled.

8. Both the Trumbull County Common Pleas Court and the Ohio Department of Natural Resources have found that Integrated Petroleum has failed to comply with the environmental laws and regulations of the State of Ohio. Mr. Olcese testified that Integrated Petroleum has removed brine contamination from the Horvats' well sites but that it has not removed the contaminated soil. He further testified that Integrated Petroleum has done some grading and filling of trenches but that it has not fully restored the land surface. He admitted that Integrated Petroleum cannot get a permit to drill any more wells unless and until it complies with all state environmental laws.

9. Mr. Olcese testified that it would cost approximately $12,000.00 to comply with the environmental laws and regulations. At the same time Mr. Olcese admitted that he does not know how soil is restored. The Horvats disputed that $12,000.00 would be enough to repair the environmental damage to their property, but they failed to produce their own evidence as to the cost.

10. On January 31, 1983 Integrated Petroleum was ordered by the Chief of the Division of Oil and Gas of the Ohio Department of Natural Resources to either plug and abandon or put into production the drilled but uncompleted well sites on the Horvats' property. Integrated Petroleum appealed this order to the Oil and Gas Board of Review. Integrated Petroleum withdrew this appeal as part of a settlement agreement which provided in pertinent part:

If Integrated Petroleum Company exercises its option to plug and abandon or produce the above-referenced wells, they are hereby ordered to begin the plugging or the producing of at least two wells within sixty (60) days after receipt hereof, and at a minimum one well must be either plugged or produced every thirty (30) days thereafter until all of the above-referenced wells have either been plugged and abandoned or put into production.

Mr. Olcese on behalf of Integrated Petroleum agreed to this order on June 3, 1983. It is undisputed that Integrated Petroleum has failed to comply with this order.

11. On April 17, 1984, the Trumbull County Common Pleas Court ordered Integrated Petroleum to complete and place into production each of the uncompleted wells at a rate of one well every forty-five days. At the time of this order, Integrated Petroleum had completed only four wells and the order thus applied to the then seven drilled but uncompleted wells. Integrated Petroleum has completed only one well since this order was entered. The Trumbull County Common Pleas Court further ordered that if Integrated Petroleum failed to complete a well within the forty-five day period then it would be deemed to have abandoned the well and any casing therein, said well becoming the property of the Horvats.

12. Integrated Petroleum now proposes to assume the lease and perform thereunder as regards the eleven drilled wells, five of which are designated as completed. It proposes to surrender the four undrilled sites to the Horvats and to release its lease as to each of the forty-acre tracts which correspond to the four undrilled well sites. Of the six drilled but uncompleted sites, Integrated Petroleum would complete, at most, only four of them. It proposes to assign two of the wells to a group of investors represented by attorney Robert Durst.

13. Mr. Olcese testified that it would cost between $40,000.00 and $50,000.00 to complete each of the drilled but uncompleted wells. Thus, if it were to complete four of the wells, it would cost Integrated Petroleum between $160,000.00 and $200,000.00. These figures include the cost of fracturing or fracing the wells, installing tubing and installing the necessary lines and tanks to connect the wells to the pipelines. Mr. Olcese did not indicate if his figures included the cost of restoring the soil around the

well sites and meeting all environmental rules and regulations.

14. Mr. Olcese testified that Integrated Petroleum will be able to complete the Horvats' wells out of its positive monthly cash surplus. He submitted a document which indicates an increasingly positive cash flow. (See debtor's Exhibit D.) This document indicates a positive cash balance for October 1984 of $11,747.00 which is expected to increase to $56,747.00 in January and March 1985. This document lists receipts of $8,810.60 for July 1984, but does not indicate disbursements for that month. It lists receipts of $19,009.07 and disbursements of $15,000.00 for August 1984. It lists receipts of $22,738.20 and disbursements of $15,000.00 for September 1984. The document indicates, that while receipts will increase, disbursements will remain at approximately $15,000.00 per month.

15. Mr. Olcese testified that much of the receipts indicated on Exhibit D represents the recoupment of expenses previously expended on behalf of investors. On cross-examination he admitted that the right of Integrated Petroleum and the other debtors to recoup this so-called "deficit expense" is disputed with at least some of the investors. He testified that the only manner in which the Horvats' wells can be completed is by using cash flow.

16. Regardless of the alleged right of the various debtors to recoup expenses from the limited partnerships, the court finds that debtor's Exhibit D offers no probative value of Integrated Petroleum's ability to complete the Horvats' wells. At the top of the first page of Exhibit D is the word "Energy" in parenthesis, perhaps indicating that this document is a cash flow analysis of Integrated Energy Programs. It is certainly not a cash flow analysis of Integrated Petroleum because, according to the Debtor In Possession (DIP) reports filed by Integrated Petroleum with this court, it received no income and made no disbursements at all for the months of July, August, and September of this year.

17. If Exhibit D purports to be a cash flow analysis of Integrated Energy Programs, then either it, or the DIP reports for Integrated Energy Programs, or both, are incorrect. Although Integrated Energy Programs did receive income and make disbursements, at least as reflected on its DIP reports for July, August, and September 1984, the figures do not match the cash flow figures on debtor's Exhibit D.

18. The figures on debtor's Exhibit D do not match the DIP reports of Integrated Services either. Nor do they match the DIP reports of Mr. Olcese.

19. The financial picture of all four of these debtors remains somewhat mysterious. The revenue from the various oil and gas operations of these debtors is paid to Program Distribution Systems, Inc. This corporation is not in bankruptcy and thus there is no accounting of these funds. It appears that Program Distribution Systems then disburses funds to the various debtors. Jovan Holdings N.V. also receives royalty payments from the oil and gas operations of the debtors. Mr. Olcese testified that he had no ownership interest in Jovan Holdings but he did admit that he is authorized to draw checks on its account with Bank One of Ravenna, Ohio.

20. Mr. Olcese testified that his salary from all of the corporate debtors totaled $5,300.00 per month. This is equivalent to an annual income of $63,600.00. He testified that this had been his income for the past few years, except for one year when he was collecting workmen's compensation. The court directed Mr. Olcese to provide the court with his W–2 statements for the past four years. He partially complied. He submitted a W–2 statement for 1980 which indicates that he received $126,-542.48 from Integrated Petroleum. He also submitted a second W–2 statement which indicates that he received $244,-309.59 from Integrated Petroleum in 1982.

21. On September 5, 1984, this court ordered the Chapter 11 proceedings of Mr. Olcese, Integrated Petroleum, Integrated Services, and Integrated Energy Programs to be consolidated into one proceeding for purposes of joint administration. The pro-

ceedings were not substantively consolidated.

## LAW

### I.

■ The court concludes from the Finding of Fact that Integrated Petroleum breached its lease with the Horvats. It has failed to repair the damage done to their land. It has failed to comply with the orders of the Common Pleas Court of Trumbull County or the Ohio Department of Natural Resources.

Section 365(b)(1) of the Bankruptcy Code, 11 U.S.C. section 365(b)(1) provides:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

Under this section Integrated Petroleum must provide adequate assurance that it will cure past defaults, compensate the Horvats for their losses, and perform its obligations under the lease in the future. Integrated Petroleum argues that it can assure future performance as well as cure defaults by its so-called cash surplus as indicated in debtor's Exhibit D. The court finds that this argument has no merit. According to its DIP reports, Integrated Petroleum has no cash surplus; it has received no income since it filed its petition and there has been no indication that it will receive any income.

There has been no indication of the basis for the figures in debtor's Exhibit D. They do not correspond with the figures on the DIP reports of any of the debtors.

Furthermore, any so-called cash surplus, whatever its source, is based on the disputed right of the various debtors to recoup alleged expenditures previously expended on behalf of investors. Considering that Mr. Olcese has given contradictory statements to this court about his income and that his figures on Exhibit D are totally baseless, this court finds that his testimony about an increasing cash surplus cannot be believed.

In short, the court must deny the application of Integrated Petroleum to assume its lease with the Horvats. It has utterly failed to show that it can provide adequate assurance of future performance.

### II.

■ Since the court has found that Integrated Petroleum may not assume its lease with the Horvats, it must now consider the Horvats' motion for relief from stay. Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. section 362(d)(1) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Adequate protection of a lessor's interest under a lease is the lessee's performance of that lease. *Dallas-Fort Worth Regional Airport v. Braniff Airways, Inc.*, 26 B.R. 628, 10 BCD 244 (N.D.Tex.1982). The court has already found that Integrated Petroleum has failed to perform its obliga-

215

tions under the lease. Furthermore, it has failed to show that there is a reasonable likelihood of it being able to perform in the future.

The court also finds that cause exists for lifting the stay, which cause is independent of the issue of adequate protection. Integrated Petroleum has been ordered by both the Ohio Department of Natural Resources and the Trumbull County Common Pleas Court to either plug and abandon or complete and place into production the uncompleted wells on the Horvats' property. Extensive hearings have already been held in the state court. The Horvats have complained of environmental damage to their farm and of violations of Ohio's oil and gas laws. See Ohio Revised Code section 1509.-01 et. seq. Nevertheless, even though Mr. Olcese himself agreed to an order on behalf of Integrated Petroleum, there has been no progress in complying with the Horvats' lease or with the laws of Ohio.

Finally, Mr. Olcese has not been truthful with the court. He has surrounded the financial dealings of his companies in a shroud of mystery. At best the figures he has supplied this court are fictitious. His delays, false assurances, and evasive tactics have driven the Horvats to despair. Indeed, his actions are indicative of bad faith, a cause sufficient for lifting the stay. *Furness v. Lilienfeld,* 35 B.R. 1006, 11 BCD 1342 (D.Md.1983); *In re Lotus Investments, Inc.,* 16 B.R. 592 (Bkrtcy.S.D. Fla.1981); *In re Victory Construction Co.,* 9 B.R. 549, 7 BCD 257 (Bkrtcy.C.D.Calif. 1981).

The court finds, therefore, that the automatic stay of the civil action in the Trumbull County Common Pleas Court, Case No. 83CV–65 should be lifted and said case should be remanded back to the Trumbull County Court. That court has already conducted extensive proceedings in said case and is better situated to grant the parties relief.

The Horvats have suffered enough from the delays and tactics of Mr. Olcese. Neither he nor Integrated Petroleum can provide the Horvats with adequate protection.

Finally, Mr. Olcese has not been truthful with either the Horvats or this court. Indeed, the testimony and actions of Mr. Olcese himself have more than established that there is cause for granting the Horvats relief from stay.